COLLINS et al. v. WARFIELD et al.

(Court of Civil Appeals of Texas. Galveston. June 21, 1911.)

1. BOUNDARIES (§ 3*)—DESCRIPTION—CONTROL OF QUANTITY OVER OTHER ELEMENTS.

While the call for quantity may be looked to in determining cases of doubt, yet, where the lines and monuments are located, they control.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 14–39; Dec. Dig. § 3.*]

2. APPEAL AND ERROR (§ 1002*)—REVIEW—VERDICT—CONCLUSIVENESS.

A verdict upon conflicting evidence is bind-ing on the appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3935–3937; Dec. Dig. § 1002.*]

3. BOUNDARIES (§ 41*)—ESTABLISHMENT—IN-STRUCTIONS.

Where the charge in a boundary case in-structed the jury that, "in a dispute over the location of a boundary line that has been actual-ly surveyed and marked on the ground, it is your duty to follow the footsteps of the sur-veyor who made the original survey," the jury must have understood that a later surveyor, who undertook to run the lines of the original survey, had no right to make any new lines or corners; and hence the refusal of a charge spe-cifically so stating was not error.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 41.*]

4. TRIAL (§ 194*)—INSTRUCTIONS—WEIGHT OF EVIDENCE.

An instruction upon the weight of the evi-dence is erroneous.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 439–441, 446–454; Dec. Dig. § 194.*]

5. BOUNDARIES (§ 35*)—ASCERTAINMENT—EVI-DENCE—ADMISSIBILITY.

In an action involving a disputed boundary, where the defendant claimed land in plaintiff's survey, basing his claim upon his call for quan-tity, evidence showing that a survey, run accord-ing to the length of the lines in the original field notes, would include the correct number of acres, but that if the lines were extended ac-cording to the calls for other known lines the survey would include a greater number of acres, is admissible.

[Ed. Note.—For other cases, see Boundaries, Dec. Dig. § 35.*]

Appeal from District Court, Houston Coun-ty; Benj. H. Gardner, Judge.

Action by Warfield and another against W. B. Collins and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

Nunn & Nunn, for appellants. Madden & Ellis and Adams & Young, for appellees.

REESE, J. This is an action in form of trespass to try title to a tract of land con-taining 733¾ acres, part of the James Ne-ville league in Houston county, by B. B. Warfield and C. C. Warfield against W. B. Collins and other defendants. By agreement of parties it was resolved into action to de-termine the true location of the western boundary of a tract of land supposed to con-tain 640 acres, originally sold and conveyed by James Neville out of the league to Mrs. Hannah Eager in 1859, which by successive conveyances passed to the plaintiff. The case was tried with the assistance of a jury, the trial resulting in a verdict and judgment for plaintiffs, from which judgment, their motion for a new trial having been over-ruled, the defendants appeal.

There is no question of title. Between the line of the tract referred to, as claimed by defendants, and the line as claimed by plain-tiffs, is included an area of 93 acres, which belongs to either the plaintiffs or the de-fendants, as this line is found to be in ac-cordance with the contention of the one or the other.

The evidence is sufficient to establish the following facts: In 1859 James Neville, the owner of the league, sold and conveyed to Hannah Eager a tract of land out of the league by the following description: "Be-ginning at one of the James Neville's corners the S. W. corner of the John Forbes league, whence a linn 20 inches in diameter bears S. 43 W. 15⁶/₁₀ varas, an iron wood bears

S. 70 W. 3⁶/₁₀ varas. Thence S. 45 deg. W. 351 varas to corner, whence a red oak 8 inches in diameter bears N. 55 W. 3½ varas a hickory bears S. 87 E. 2½ varas. Thence S. 45 E. at 2,361 varas intersect the S. E. line of the Neville league. Thence N. 45 E. with said line 2,712 varas to Neville's N. E. corner of the league. Thence west with John Forbes league line 3,340 varas to the place of beginning, containing 640 acres of land." By the same description in the various deeds the title passed to appellees. Some of the intermediate conveyances referred to the tract as containing 640 acres, more or less; but the immediate deed to appellees, as well as some of the intermediate conveyances, described it, as in the first deed, as containing 640 acres. After describing the land as above, in their petition, a survey having been made of the land for appellees, it is further alleged that the following description correctly and more definitely describes the land conveyed by the deed referred to, to wit: Beginning at the S. W. corner of John Forbes league, stake in the south bank of sand fork of Tantabogue creek, a double sycamore bears N. 15 E. 12²/₁₀ varas, an elm 8 inches in diameter bears S. 67 E. 6⁸/₁₀ varas, both marked X. Thence S. 45 W. 372½ varas corner a red oak 14 inches diameter bears N. 55 W. 3½ varas marked XX (dead), an elm 8 inches diameter bears N. 56½ W. 1⁷/₁₀ varas marked X, a sweet gum 14 inches diameter marked X bears S. 50 E. 10⁶/₁₀ varas. Thence S. 45 E. crossing Tantabogue creek ten times 2,496 varas to corner on league line of James Neville league, a hackberry 14 inches diameter bears S. 55 E. 3⁶/₁₀ varas, a sweet gum 30 inches diameter bears S. 67 W. 11⁸/₁₀ varas, both marked X. Thence N. 45 E. with said Neville's league line 2,946 varas to the Neville corner on the south line of the John Forbes league, a pine 10 inches in diameter bears S. 78 W. 3½ varas, a ditto 12 inches diameter bears S. 13½ E. 4 varas, both marked X. Thence west with said Forbes league line 3,571 varas to the beginning, and containing 733¾ acres. This is in accordance with a survey made by Durst, a surveyor, at the instance of appellees.

The difference between the parties is as to the location of the beginning corner of the tract, and the length of the first line, which is called for in the deed as 351 varas, is found by Durst's survey to be 372½ varas to reach the red oak, claimed by appellees to be the original witness tree called for in the field notes, and is claimed by appellants to be 164 varas in length, it being necessary to so reduce the length of this line to limit the land conveyed to 640 acres, the quantity called for, although this concedes to appellees, as claimed by appellants, really 2½ acres more than they are entitled to, or 642½ acres in all. The following plat will serve to explain the contentions of the respective parties:

The evidence as to the location as to the beginning corner of this survey, called for in the field notes of the deed to Hannah Eager as "one of the James Neville's corners the S. W. corner of the Jno. Forbes league, a linn 20 inches diameter bears S. 43 W. 15.6 varas and an iron wood bears S. 70 W. 3.6 varas," is conflicting. Testimony for appellants tended to show that the linn tree called for was still to be found, and that the present recognized corner of the Forbes called for is at a different place from the point where it was recognized to be in 1859 when the Hannah Eager deed was executed. As we have been able to understand the evidence on this point, the beginning point claimed by appellants is located about 20 varas west from the point claimed by appellees as the corner of the Forbes called for as the beginning corner of this tract. If this be true, given the same length of the first line, which runs S. 45 W. from the beginning, this would place the line in dispute slightly further west than is claimed by appellees. The difference in these respective locations of the beginning corners therefore is only significant, from the fact that on a line S. 45 W. from the point claimed by appellees to be the beginning corner, there is found according to appellees' witness Durst a red oak tree or stump, not at the proper distance, 351 varas, but 372½ varas, requiring this line to be projected 21 varas to reach it. This stump could not be reached, on the course called for, from beginning corner called for and located as claimed by appellants. The controversy really turns upon the integrity of this red oak tree or stump, found by the witnesses for appellees, and claimed to be the original red oak tree called for, along with a hickory which is not found, as marking the end of the first line of the tract. The dis-

crepancy in the distance from the beginning between 351 varas, according to the calls, and the distance actually found on the ground, 372½ varas, is not of controlling significance, if the other evidence of the identity of this corner tree was sufficient to satisfy the jury that the line actually ran to this tree. There was some evidence of an old marked line from the beginning corner according to appellees' contention, to, or nearly to, this tree, and of an old marked line running thence S. 45 E., and that this line was traced out for about the distance called for in the field notes, 2,361 varas; but this line had also to be extended to 2,496 varas to reach the league line of the Neville league called for. The first line, as claimed by appellees, crosses Tantabogue creek, which is not called for in the field notes, and it is insisted by appellants that this shows that the first corner lies east of the creek; but to rebut this there is evidence which tends to show that no red oak or hickory growth is to be found east of the creek, nor any indication that there was ever any such growth on that side, where, on account of the land being much lower than on the west side, the soil was unsuitable for such growth, while on the west side the red oak tree marked was found, and, although no hickory corresponding in position to that called for is found, hickory trees were found near that point and in the immediate vicinity, leading to the reasonable conclusion that the hickory tree called for had disappeared in the long time elapsing, about 50 years; the red oak tree being dead. Appellants endeavor to construct the survey with reference to the quantity of land called for alone, beginning at the corner of the Forbes, reversing the calls, requiring the shortening of the first line from 351 varas to 164 varas.

[1] While there may be evidence that it was the intention of Neville to convey 640 acres, and that it was supposed that the field notes described that much land, it must also be presumed to have been his intention to convey the land described by the field notes of his deed, and, if it can be definitely ascertained where these lines and corners were located on the ground by the surveyor who made the survey in accordance with which the deed was made, this would control the call for quantity. The call for quantity may be looked to in determining, in case of doubt, where the lines are located; but, once they are ascertained, they control the call for quantity, unless in a proper case of fraud or mistake the deed is corrected in accordance with the intention of the parties. No such case is presented here. It has nothing to rest upon except the naked fact that the land conveyed, after being particularly described by metes and bounds, is said to contain 640 acres. Appellants cannot come in now, after 50 years, and in this suit and upon this fact have the deed corrected so as to convey only 640 acres of land.

The evidence tends to show that there was a mistake in the length of all of the lines of the survey, and it is on this account that the quantity of land actually found within the lines is 93 acres in excess of the 640 acres called for. For instance, starting from the beginning point, the jury extended the line 21 varas in order to reach this red oak tree; the evidence being sufficient, on the whole, to authorize the finding that this was the tree called for. From this tree the field notes call for a line 2,361 varas to the south line of the league, a line as to the location of which there is no dispute. Under well-settled law, as to the comparative dignity and value of calls in a survey, the jury was authorized to conclude that the surveyor went to this league line, which in fact required this line to be extended 135 varas, making the distance from the red oak tree to this line 2,496 varas. From this point the next call is 2,712 varas to the northeast corner of the league in the south line of the Forbes, likewise a point as to the location of which there is no dispute. To reach this point the distance really, as found upon the ground, is 2,946 varas, an excess of 234 varas. The next call is with Forbes line 3,340 varas to the beginning. This line is found on the ground to be 3,571 varas, or an excess of 231 varas. It can hardly be contended that the call for distance in the field notes would arbitrarily control the calls for the league lines and corners, merely in order that no more land than the quantity called for should be conveyed. Nor do we understand that appellants so contend. We think appellants are mistaken as to the controlling importance of the recital in the deed that the tract contains 640 acres. The question, after all, is the true location on the ground of the lines of the survey, and, if this can be determined, that will control. Without discussing the evidence fully, we think it was sufficient to authorize the finding of the jury in favor of appellees' contention as to the location of the disputed line.

[2] The evidence was conflicting, and the verdict of the jury is binding on this court. It certainly cannot be urged, with any reason, that the verdict is so against the weight and preponderance of the evidence as to be manifestly wrong.

[3] The court in its charge set out the field notes of the original deed from Neville to Hannah Eager, which are the same as those in the mesne conveyances in appellees' chain of title, and the deed to them, and also set out the field notes as given in the petition, which describe the land according to the claim of appellees, and which are claimed to be descriptive of the same land described in the original field notes. The

jury was then instructed to find for appellees if they found that the first description aforesaid embraced all of the land embraced in the second description; otherwise to find for the appellants, unless they found that the description of the land as claimed by appellees did not contain all of the land embraced in the original field notes, in which latter event they should return a verdict for appellees for so much of the land as under the evidence they might find that they were entitled to. The jury was further instructed that: "In a dispute or controversy over the location of a boundary line that has been actually surveyed and marked on the ground, it is your duty to ascertain and follow the footsteps of the surveyor who made the original survey, and the relative value of the calls in the field notes is in the order named as follows: Natural object, artificial objects, course, and distance. In determining the questions involved you will look to all the evidence before you." The jury must have understood from this charge that the surveyor, Durst, in undertaking to run the lines of the original survey, had no right to make any new lines or corners differing from those of the original survey, and there was no error in refusing the charge requested by appellants, and referred to in the first assignment, specifically so telling the jury. Nor was there any error in refusing the requested charge referred to in the second assignment. It may be remarked in this connection that the surveyor, Durst, who first surveyed this tract before any controversy arose about the location of the disputed line, and solely with the view of determining and marking the lines and corners, testified that the linn tree now standing, and which appellants claim to be the tree called for in the original field notes, was not in fact the witness tree called for; that he tried to identify this tree as marking this corner of the Neville and Forbes, but could not do so. The evidence was conflicting as to whether this tree was the tree called for, and, in telling the jury to find and follow the footsteps of the surveyor who ran out the lines embraced in the Eager deed, the whole issue as to this matter was submitted to them in a way that could not be misunderstood. If in fact this linn be taken as the true beginning point of this survey, it does not at all sustain appellants' contention as to the length of the first line, upon which depends the true location of the disputed line. That line would still have to be 351 varas long, unless the quantity is absolutely to control, which is not correct under the facts of this case, and there would be only a difference of about 20 varas or less, instead of 187 varas, between the length of the line claimed by appellants and that called for in the field notes. The first, second, and third assignments of error and the several propositions thereunder are therefore overruled.

[4] The refusal to give the requested charge referred to in the fourth assignment was not error. There was no evidence of such acquiescence on the part of the owners of this tract as would estop appellees to claim to the true line. Such evidence of recognition as is detailed was but a circumstance to be considered by the jury, along with other evidence, in determining the true location of the disputed line. The charge as requested was objectionable as being on the weight of the evidence, and tended to convey to the jury the idea that special importance was attached by the court to this particular fact. The assignment and several propositions are therefore overruled.

The requested charge referred to in the fifth assignment was properly refused. It attaches too much importance to the fact that the land conveyed is recited to be 640 acres. This follows a clear and definite description of the boundaries. No question is made of the fact of an actual survey.

There is no merit in the sixth assignment.

The seventh assignment of error complains of the action of the court in refusing a new trial on the ground that the verdict is contrary to and not supported by the evidence. What we have said renders any further discussion of this assignment unnecessary. There was a clear case of conflict of evidence. The principles of law applicable thereto are few and simple, and the evidence, we think, supports the verdict.

There was no error in that portion of the charge which is objected to by the eighth assignment of error. This part of the charge instructed the jury, in effect, that if they did not agree with the contention of either party as to the location of the disputed line, but found that the true line lay between the two, to so find. The language of this part of the charge might well have been more clear and definite, but we do not think that the jury could have failed to understand the principles of law intended to be stated.

The same reply must be made to the objection in the ninth assignment that the charge is not a clear, plain, and intelligible statement of the law as applicable to the evidence. The charge does little more than tell the jury that it is their duty to ascertain and follow the footsteps of the original surveyor, and instructs them in a very meager way as to the relative value of calls, but the facts present a case in which nothing more was absolutely necessary to enable an intelligent jury to arrive at a correct result as to the sole issue in the case.

[5] There was no error in permitting the witnesses Durst and Hall, both surveyors, to testify, over the objections of appellants, as set out in the tenth and eleventh assignments. This testimony, in substance, was only that the original field notes, giving the lines the lengths called for, would include 640 acres, and the effect of it was to explain that to extend the second line to the Neville league line as called for, and the third line

to the corner of the league as called for, and the fourth line the distance necessary to reach the beginning point as called for, necessarily included more than 640 acres, unless the first line is shortened from 351 varas, as called for, to 164 varas, as claimed by appellants. This last contention of appellants seems to be supported by nothing more substantial than to limit the quantity to 640 acres.

The twelfth assignment is without merit.

We have examined carefully the several assignments of error and the propositions thereunder, and our conclusion is that none of them present grounds for reversal. The case seems to have been fairly tried. The jury resolved the conflict in the evidence in favor of appellees, and their finding is conclusive so far as this court is concerned.

Finding no error requiring a reversal, the judgment is affirmed.

Affirmed.