YANTIS v. JONES et al.    (No. 5636.)

(Court of Civil Appeals of Texas. San Antonio. March 15, 1916.)

1. BILLS AND NOTES ☞357 — NEGOTIATION AND TRANSFER—"HOLDER FOR VALUE."

A bank to which notes were indorsed as collateral security for a valuable consideration without notice was a holder for value and entitled to the same protection as if the transfer had been an absolute sale.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 909–912, 961; Dec. Dig. ☞357.

For other definitions, see Words and Phrases, First and Second Series, Holder for Value.]

2. BILLS AND NOTES ☞358 — NEGOTIATION AND TRANSFER—BONA FIDE HOLDERS.

A valid antecedent debt is a valuable consideration for the transfer of a note as collateral security.

[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 913–923, 961; Dec. Dig. ☞358.]

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. CANCELLATION OF INSTRUMENTS ⬤⇒4 — REFORMATION OF INSTRUMENTS ⬤⇒19(1) — GROUNDS—MISTAKE.

An instrument will not be set aside or reformed on the ground of mistake of one of the parties unless superinduced by the fraud of the other.

[Ed. Note.—For other cases, see Cancellation of Instruments, Cent. Dig. § 1; Dec. Dig. ⬤⇒4; Reformation of Instruments, Cent. Dig. §§ 74, 76–78; Dec. Dig. ⬤⇒19(1).]

Appeal from District Court, Bexar County; S. G. Tayloe, Judge.

Action by Robert S. Yantis against Mary K. Jones and another. From a judgment for defendants, plaintiff appeals. Affirmed.

R. L. Edwards, of San Antonio, for appellant. Butler L. Knight, of San Antonio, for appellees.

FLY, C. J. This is an action of trespass to try title to 10 city lots out of original lot 142 and new city blocks 2125 and 2136, bounded on the north by Castro street, on the east by North Zarzamora street, on the south by Rivas street, and on the west by North Bandera street, in the city of San Antonio, instituted by appellant against Mary K. Jones and her husband, L. Jones. It was alleged in the petition that the property was conveyed to Robert S. Yantis by Jesse Yantis and Frank M. Yantis, man and wife, on June 24, 1914. Appellees answered by plea of not guilty and that the land had been conveyed to Mary K. Jones on December 1, 1913, by Jesse Yantis and wife, and setting up the circumstances under which the deed was executed. No jury was demanded, and the court rendered judgment in favor of appellees quieting their title to the land.

The evidence discloses that Jesse Yantis, the father of appellant, was desirous of selling 87 lots of land in San Antonio, and employed L. Jones and G. W. Carter to sell 71 of the same, in consideration of which the remaining 16 lots were to be conveyed to Mary K. Jones. The 71 lots were sold to John Morrow for $36,000, one half cash and the other half in two notes, one for $12,000 due in five years, and the other for $6,000 due in six years. The deed to Morrow was executed on December 1, 1913, and on the same date a deed was executed to Mary K. Jones under the terms of the following contract, omitting the preface and attesting portion:

"Whereas, the said parties of the second part, as the agents of the party of the first part, have obtained for the said party of the first part a purchaser for certain 71 lots in the city of San Antonio, Bexar county, Texas, and the said party of the first part has this day conveyed to one John Morrow, of Robertson county, Texas, said 71 lots, said deed reciting a consideration of $36,000.00, $18,000.00 in cash or its equivalent, and two notes Nos. 1 and 2, being for the sums of $12,000.00 and $6,000.00, respectively, due and on or before 6 years after date, with interest from date at the rate of 8 per cent. per annum;

"And whereas, said party of the first part has this day executed a deed to Mary K. Jones to certain 16 lots in the city of San Antonio, Bexar county, Texas:

"Now, therefore, it is agreed between the parties hereto that said deed executed by said party of the first part to said Mary K. Jones shall be deposited by the parties hereto in the Merchants' & Mechanics' Bank in the city of San Antonio, Bexar county, Texas, to be held by said bank in escrow until said note for $12,000.00 shall have been hypothecated or sold by the said party of the first part, and upon the sale, hypothecation or cashing of said note, said deed deposited in escrow shall be delivered to the said Mary K. Jones or her agent.

"It is further agreed and understood that upon the sale, cashing, or transfer of said note for $12,000.00 by said party of the first part that said party of the first part shall pay unto the said parties of the second part the sum of twelve hundred ($1,200.00) dollars in cash, the same being due the said parties of the second part as their commission for the sale of said 71 lots."

In pursuance of that contract a deed to 16 lots was executed by Jesse Yantis and wife to Mary K. Jones, and placed in escrow with a certain bank. Afterwards the note for $12,000 was placed with the Citizens' Bank & Trust Company as collateral to secure a note for $8,450 given by him for borrowed money, and suit was instituted on the note by the bank against Morrow, the maker of it. In April, 1914, the deed to Mary K. Jones was delivered by the Merchants' & Mechanics' Bank to L. Jones, and he went into possession of the land. Before the deed was executed by Jesse Yantis and Frank M. Yantis, his wife, to their son, the appellant, the latter was shown the contract made by his father, and was informed that the deed to Mary K. Jones had been delivered to her, and that appellees had gone into possession of the land. There was no consideration for the sale of the land to appellant. There was no mistake as to the contract between Jesse Yantis and L. Jones and G. W. Carter. Jesse Yantis fully understood the terms of the contract when he signed it. Under the terms of the contract, if the note was sold or transferred, the deed was to be delivered to Mary K. Jones, and it was so delivered. The notes were transferred and delivered to the bank as collateral security for the notes executed by Jesse Yantis to the bank. Jesse Yantis received the benefit of the notes executed to him by Morrow.

[1, 2] The bank, when the notes were indorsed to it, as collateral security, for a valuable consideration, without notice, was a holder for value and entitled to the same protection as if the transfer had been an absolute sale. A valid antecedent debt would be a valuable consideration. Colebrooke, Coll. pp. 7, 8. Undoubtedly the indorsement of the note or the making of the collateral security contract with the bank would be a transfer within the contemplation of the contracting parties. While the word "hypothecate" is improperly applied in case of a delivery of promissory notes as collateral se-

curity, still the evidence showed that the parties so understood and desired it.

While we doubt whether evidence of the sense in which the scrivener used the word "hypothecate" in the contract was permissible, still the witness stated:

"I put it in there; don't know really whether I knew what it meant, but, lawyerlike, I wanted to use a big word to impress my clients, was, perhaps, the purpose of putting it in there."

He might, as stated in the bill of exceptions, taken because of the refusal to allow him to define "hypothecate" as he used it, have thought it meant "sell"; still it is extremely doubtful, for he did state:

"I might possibly have had in mind this: That if Mr. Yantis had gone out and used this note and had gotten, say, $12,000 secondhand, I believe that the intention of the parties Jones was to get a commission, for the purpose of Yantis was to get money and get substantially $12,000, and I might have put that in so as to protect Jones from a hypothecation of all the note. * * * "

If that means anything, it means that the parties had in view that Yantis might use the notes as he did use them for collateral security. If that is what the parties intended, it would not matter what the scrivener may have thought the word "hypothecate" meant.

In the mortgage or deed of trust given by Jesse Yantis to the West End Lumber Company on the Morrow notes the power to sell the notes was given, the proceeds to be used in paying certain debts due the Citizens' Bank & Trust Company, the residue to be used in paying debts due the lumber company. This was undoubtedly a transfer within the meaning of the contract. L. Jones swore that he explained the contract to Yantis and that they understood it to mean if the notes were mortgaged or money obtained on them the deed was to be delivered. He said:

"I told him, 'Now, if you take this note and mortgage it or put up and get money on it, our contract is up;' and he says, 'Yes,' and the deed in the bank should be turned over. * * * "

[3] It would seem useless to consider the question of mutual mistake in the contract when one party swore positively that he fully understood the contract and explained it to the other party. If Jesse Yantis was mistaken as to the contract, the evidence fails to show it, and, if he was mistaken, that would not suffice, for the reason that it takes at least two to make a mutual mistake. No one objected to the language of the contract at the time, and the rule is thus stated in Pomeroy, Equity Jurisprudence, § 843:

"If an agreement or written instrument or other transaction expresses the thought and intention which the parties had at the time and in the act of concluding it, no relief, affirmative or defensive, will be granted with respect to it, upon the assumption that their thought and intention would have been different if they had not been mistaken as to the legal meaning and effect of the terms and provisions by which such intention is embodied or expressed, even though it should be incontestably proved that their in-

tention would have been different if they had been correctly informed as to the law. These rules are settled with perfect unanimity where one party has been mistaken in such a manner; they are also applied by very many cases where the same mistake is common to both parties."

An instrument will not be set aside or reformed on the ground of mistake of one of the parties unless superinduced by the fraud of the other. Kelley v. Ward, 94 Tex. 289, 60 S. W. 311. Fraud is not charged nor shown in this case. The evidence tends to show that there was no mistake upon the part of either of the parties, but that each fully understood the contract to mean that upon the notes being sold, mortgaged, or pledged the deed, placed in escrow, should be delivered to Mary K. Jones.

The judgment is affirmed.