HENSON et ux. v. PETERSON et al.
(No. 2178.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 8, 1919. Rehearing Denied Jan. 22, 1920.)

1. REFORMATION OF INSTRUMENTS ⟲⟳19(1) — MISTAKE MUST BE MUTUAL.

A deed will not be reformed on the ground of mistake, where the mistake was not mutual.

2. REMAINDERS ⟲⟳10 — REMAINDERMEN'S INTEREST UNDER DEED CONVEYING LIFE ESTATE CANNOT BE DEFEATED BY AGREEMENT BETWEEN GRANTOR AND GRANTEE.

Where deed conveyed life estate, with remainder to grantee's children, grantor and grantee could not, by subsequent agreement, enlarge the grantee's estate, or divest the remaindermen of the interest acquired by them under the terms of the deed.

3. REFORMATION OF INSTRUMENTS ⟲⟳47 — DEED WILL NOT BE CONSTRUED WHERE REFORMATION IS DENIED.

In suit to reform a deed, court in denying reformation will not construe deed solely for the purpose of relieving an uncertainty regarding its legal effect.

---

⟲⟳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Camp County; J. A. Ward, Judge.

Suit by Dave Henson and wife against W. Y. Peterson and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

Moses M. Smith, of Pittsburg, for appellants.

Bass & Engledow, of Pittsburg, for appellees.

HODGES, J. Fannie B. Henson, joined by her husband, Dave Henson, filed this suit in the district court of Camp county against her father, W. Y. Peterson, and her four minor children. The purpose of the suit as stated in the petition is to reform a deed. It is alleged that in February, 1917, W. Y. Peterson executed the following deed of conveyance:

"Know all men by these presents: That I, W. Y. Peterson, of the county of Camp, state of Texas, for and in consideration of the sum of one hundred and fifty dollars and the love and affection for my daughter Fannie B. Henson to me paid and secured to be paid by Fannie Belle Henson as follows: [Then follows a description of three vendor's lien notes aggregating $150] have granted, sold and conveyed, and by these presents do grant, sell and convey unto the said Fannie Belle Henson, of the county of Camp, state of Texas, all that certain tract or parcel of land." [Then follows a description of a tract of land containing 69.4 acres.] *This deed is intended to convey to Fannie B. Henson a life estate in the above-described land, and after her death said land shall be the property of her children,* to have and to hold the above-described premises, together with all and singular the rights and appurtenances thereto in any wise belonging unto the said Fannie B. Henson, her heirs and assigns forever, and I do hereby bind myself, heirs, executors and administrators to warrant and forever defend all and singular the said premises unto the said Fannie B. Henson, her heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof."

Another paragraph follows which stipulates for the retention of the vendor's lien. The deed was dated February 13, 1917, and was acknowledged on the 16th day of February following. There was appended to the deed the following writing:

"Pittsburg, Texas, November 27, 1918.

"Know all men by these presents: That we, W. Y. Peterson, the maker of this deed, and Fannie B. Henson and husband, D. C. Henson, to whom this deed is made, all being present and giving full consent that the last three lines of the written part of this deed be stricken out before the deed was put of record."

This writing was signed and sworn to by all three of the parties mentioned. The deed was filed for record on the 29th day of November, 1918. The lines referred to as having been stricken out were those italicized above immediately following the description, and which evinced a purpose to limit the interest of Fannie B. Henson to a life estate in the property conveyed. The evidence shows that lines were drawn through these words at the time the agreement was executed. It is also alleged that the language of the deed above referred to was originally inserted by the grantor by mistake; that Fannie B. Henson was ignorant of the phraseology usually employed in deeds, did not understand the legal effect of the terms employed in this conveyance, and did not know the contents of the deed for some time after it had been delivered to her. The petition closes with a prayer that the plaintiffs "have judgment and a decree reforming the deed, declaring Fannie B. Henson to have the title in fee simple in said land against Peterson and the four minor children, and that such decree stand in lieu and stead of a deed to said land to be recorded as such in the deed records of said county," and for such other and further relief as the plaintiffs might be entitled to receive. W. Y. Peterson answered, denying that there was any mistake on his part in the execution of the deed, and alleging that it was executed just as he intended it—for the purpose of conveying a life estate only in the grantee, Fannie B. Henson. The minor defendants through their guardian ad litem answered with a general denial and general demurrer, claiming also that the erasure of that part of the deed which sought to limit the interest of Fannie B. Henson to a life estate in the property conveyed was made some time after the execution and delivery of the deed, and that it was of no effect in divesting them of the remainder which they took under the original terms of the deed. They also adopted so much of the pleadings of the codefendant, Peterson, as was applicable. The case was tried before the court without a jury, and a judgment rendered in favor of the defendants. The findings of the court upon the material issues of fact are, in substance, as follows:

"There was no understanding or oral agreement prior to the execution of the deed that it should convey a life estate to Fannie B. Henson with remainder to her children, but the deed was intentionally executed in that form, and Fannie B. Henson was present and heard the deed read at the time of its delivery. She thereafter received it without objection, and no complaint was made by her until some time afterwards, when she and her husband desired to sell the land. Peterson intended to convey to his daughter only a life estate at the time he executed the deed, it being exactly what he desired it should be, and therefore there was no mutual mistake of the parties. The court further finds that there was no fraud practiced by Peterson on his daughter, and that there were no facts which would justify a reformation of the deed."

[1-3] The findings of fact are fully sustained by the evidence. If there was no mu-

tual mistake of the parties at the time the deed was executed and delivered, then there is no legal reason presented for reforming it. The finding of the court settled that issue. Mrs. Henson testified, in substance, that she was not present at the time the deed was executed, and did not know its contents until after she reached her home. Her testimony also shows that the agreement to erase a portion of the deed was made by her and her father more than a year after the deed had been executed and delivered. That agreement could not, under the circumstances, enlarge the estate conveyed to her by the deed, or divest the minor children of the interest which they acquired under the terms of the deed. Appellants insist that under the rule announced in Shelley's Case Mrs. Henson may claim a fee-simple interest under the terms of the deed as originally written. If that construction of the deed be correct, there is no occasion to have it reformed. When a proper controversy arises this conveyance will be construed by the court for the purpose of determining the rights of the three contesting parties. We are not called upon to construe a deed in advance solely for the purpose of relieving an uncertainty regarding its legal effect.

The judgment will therefore be affirmed.