**OSTROM et al. v. JACKSON et al.**

No. 13902.

Court of Civil Appeals of Texas. Fort Worth.

April 21, 1939.

H. A. Leaverton, of Longview, for H. A. Pace, Roy Gardner, and J. R. Ostrom.

Lee & Porter and Edward A. Brown, all of Longview, for Solon and Emma Jackson.

SPEER, Justice.

Solon Jackson and his wife, Emma Jackson, instituted this suit in a district court of Rusk County, against J. R. Ostrom, H. A. Pace, Roy Gardner, Randolph Caldwell and G. C. Waldrop, to reform a certain contract entered into between plaintiffs and defendants, Pace and Gardner, so as to conform to a previous oral agreement between the same parties and to cancel a subsequent deed or assignment of mineral rights, made by plaintiffs to them.

As equitable grounds for the relief sought, plaintiffs alleged that they were negroes, without education or experience in such matters, while Pace and Gardner were men of broad experience and training in all matters pertaining to contracts, deeds and conveyances, more especially relating to oil and mineral rights.

Plaintiffs alleged they were the owners of the following described tract of land:

"A part of the Peter W. Holmes Survey, about 5 miles west from the town of Kilgore and described as follows:

"Beginning in the center of road between W. R. Border's and H. G. Law-

rence; Thence east 14 chains 40 links to corner; Thence south 11 chns. to corner witness rock; Thence east 22 chs. to corner witness pine; Thence south 9 chns. 40 lks. to corner a stake witness R. O. 6 feet S. 70 E.; Thence west 32 chains 90 links to stake; Thence north 11 chains 80 links; Thence west 3 chains 50 links to road; Thence north with said road 9 chains 40 links to place of beginning, containing 50 acres of land."

The record before us discloses that W. R. Borders and wife conveyed to J. V. Borders, by deed dated December 9th, 1909, duly recorded, the land described by the same field notes; that by deed dated September 25th, 1923, duly recorded, J. V. Borders and wife conveyed to Solon Jackson the same tract, under that description.

Further allegations are made that plaintiffs had, prior to the date of the contract with Pace and Gardner, executed an oil and gas lease on said premises to W. P. Moore, and had sold, assigned and conveyed unto the said Moore one-half of the mineral rights under said tract. The instrument introduced in evidence under this allegation was dated September 22nd, 1930, filed for record on the same day, and bears the same description set out in the petition and the mentioned deed under which plaintiffs hold.

Allegations are made that on or about March 1st, 1931, defendants, Ostrom, Pace and Gardner, entered into a conspiracy to obtain a portion of plaintiffs' property without paying an adequate consideration therefor. That in pursuance of said scheme and conspiracy, Pace and Gardner represented to plaintiffs that they could recover for them certain acreage outside of that covered by the field notes above mentioned; that upon said representations, plaintiffs entered into an agreement with them, that if they would so recover any acreage for plaintiffs outside of and over and above that included in said field notes, that plaintiffs would, in consideration therefor, convey to them a two-thirds interest in the oil, gas and mineral rights thereunder, and that plaintiffs were to retain one-third interest of said mineral rights and to have, in addition thereto, an undivided free over-riding one-third interest in an oil well to be drilled by Pace and Gardner thereon.

Plaintiffs alleged that after said oral agreement, above referred to, was had, defendants had plaintiffs' land surveyed, and prepared a written contract and agreement for execution by plaintiffs, which was materially different in terms and effect from that agreed upon. That said written instrument was of date March 5th, 1931, and provided substantially that in consideration of defendants having plaintiffs' land surveyed and furnishing to them a copy of said field notes, plaintiffs would convey to Pace and Gardner an "undivided two-thirds (⅔) interest in and to all the oil, gas and other minerals lying in and under all lands of said tract over and in excess of fifty (50) acres of land." There are further allegations that because of plaintiffs' ignorance and inability to realize and comprehend the nature and extent of said instrument, and relying upon defendants to deal fairly with them, they did execute and deliver same to defendants, Pace and Gardner. Plaintiffs allege that said written contract does not truly speak the terms agreed upon between the parties prior to its drafting and execution; especially in that plaintiffs had not agreed with defendants to convey to them any interest whatever in any part of the land covered by the field notes in their said deed, but only to such acreage as defendants might recover for them "outside of and not included by said field notes and description; and then only upon condition that said defendants drill an oil well upon said land and give plaintiffs a one-third (⅓) interest therein; that said instrument was obtained from these plaintiffs by fraud and fraudulent representations that it contained the true agreement as made, and that it was entered into by these plaintiffs solely upon such false representations, which were designed to and did mislead them, so that they signed said instrument when they would not have done so had they understood its meaning as it is written."

Paragraph VII of plaintiffs' petition becomes material in the further discussion of this appeal, and we therefore quote it as presented. It reads: "In the event plaintiffs be mistaken in their allegations that said written agreement (purported written contract) was altered from the true agreement by the fraud of defendants, then plaintiffs allege that it does not set out the true agreement of the parties because of the accident or mistake on the part of the defendants or their attorney."

Plaintiffs further averred that, relying upon the correctness of said contract, and the information furnished them that de-

990

fendants had found some excess land to which plaintiffs were entitled, and not included in the description of their land and that leased to said W. P. Moore, defendants, Pace and Gardner, caused a conveyance to be drawn and procured its execution by plaintiffs, covering two-thirds of the oil, gas and mineral rights in and under about five acres off the south edge of the tract, described in their field notes above set out. That said instrument in that condition was executed by plaintiffs upon the belief that defendants would carry out their agreement to immediately drill a well thereon and that plaintiffs would have a one-third interest therein.

Plaintiffs also alleged that to further effectuate the conspiracy and fraud, the defendants, Pace and Gardner, conveyed to Ostrom certain of the interests claimed by them and that Ostrom was asserting a claim to the property, and that all said claims constitute a cloud upon plaintiffs' title to their damage, and so forth.

Other allegations are to the effect that said purported instruments were without consideration, and that the deed from plaintiffs to defendants was void because the certificate of acknowledgment thereto was not true, and that no acknowledgment of plaintiffs was ever taken according to law; but these allegations need not be set out further, since they do not enter into the result of this appeal.

Prayer was for the reformation of the written contract, so as to conform to the oral agreement made prior to its execution, and that the deed and conveyance of the mineral rights to the five acres be canceled and set aside, and that the cloud created upon their title thereby be canceled and removed, and for general relief.

Defendants, Caldwell and Waldrop, filed disclaimers, and judgment was entered thereon, and it becomes unnecessary to make further reference to them.

Answers were filed by Ostrom, Pace and Gardner, embracing general demurrer, general denial, pleas of not guilty and special defenses of innocent purchasers for value, estoppel by the acts and conduct of plaintiffs, and the three, four, five and ten year statutes of limitation.

No jury being demanded, the cause was tried to the court, and judgment was entered, awarding to plaintiffs as against Ostrom, Pace and Gardner, all surface rights and one-sixth of the royalty interest in and to the approximately five acres in a described strip off the extreme south side of plaintiffs' land, being 93 feet wide at the west end, and 102.4 feet wide at the east end. To this judgment both the plaintiffs and defendants excepted, gave notice of appeal and all parties perfected writs of error to the Texarkana Court of Civil Appeals. The defendants have briefed by counter propositions the assignments of error made by plaintiffs and have asked that their brief be considered in connection with their own assignments.

Upon the record before us, we have concluded the judgment should be reversed and remanded, and in assigning our reasons therefor, we shall refrain, as far as possible, from commenting upon the weight and extent of the evidence, to avoid giving any advantage to either of the parties upon another trial.

The parties will carry the same designation here as in the trial court, except insofar as it becomes necessary to refer to one or more of the defendants, and when such occasion arises we shall mention them by names.

At the request of plaintiffs, the trial court filed a very complete findings of fact and conclusions of law, and we have compared these findings to the statement of facts and find they are in complete harmony with and fully supported thereby.

We think the case was tried, largely, upon the wrong theory, as attempted to be plead by plaintiffs, but because of the nature of the pleadings, the court doubtless felt impelled to enter the judgment mentioned.

It occurs to us that plaintiffs sought a cancellation of the written contract between them and defendants, Pace and Gardner, because it did not conform to the oral agreement made prior thereto, and that plaintiffs signed the contract at a time when they were led to believe by the named defendants, through fraud and misrepresentations, that it was in conformity to the oral agreement, and that alternatively if not by such fraud and misrepresentations, then through mistake.

The distinction or difference between the oral agreement and the subsequent written instruments lies in the fact that in the oral agreement defendants were to receive a two-thirds interest in the mineral rights under all lands they might locate, belonging to plaintiffs, not covered by the

Moore lease previously given by plaintiffs, leaving to plaintiffs the remaining one-third and a one-third interest in a well to be drilled thereon by defendants. The written contract subsequently drawn by defendants and signed by plaintiffs obligated them to convey to the named defendants two-thirds of the mineral rights in any excess over fifty acres that might be found to be in plaintiffs' lands covered by the Moore lease, with no reference to the agreement by which plaintiffs were to have a one-third interest in a well to be drilled on such lands as should pass under the contract, and the subsequent deed agreed to be executed.

In the fact findings by the court, it was found that plaintiffs purchased the land claimed by them from Borders, by deed dated September 5th, 1923, and that by an actual survey on the ground, the true south boundary line thereof was located north of the occupation line, between a point about 90 feet north of the southwest corner and a point 102 feet north of the southeast corner of plaintiffs' tract. That when J. V. Borders purchased the land from his father, prior to its sale to plaintiffs, he erected a fence on the present occupation line and that thereafter that fence was recognized by everybody as the south boundary line. That the strip of land here in controversy lies between the fence line and the line above mentioned as the true south boundary line; that when Borders sold to plaintiffs, the deed covered all north of the fence and occupation line; that Borders had good title to all land covered by his conveyance to plaintiffs; that when plaintiffs leased to Moore, on September 22nd, 1930, it was intended by the parties that the lease should cover all of the land north of the occupation fence line; that at the same time, plaintiffs leased the land to Moore, they also sold and conveyed to him a one-half interest in the royalty to all of the land north of the occupation fence line. The court further found as a fact that plaintiffs entered into the written contract on March 5th, 1931, with defendants, Pace and Gardner, at which time it was the intention of all parties that plaintiffs should convey to those defendants two-thirds of whatever they may have owned in any unleased excess acreage of land, if any, in the whole of said Solon Jackson tract north of the occupation fence line. That defendants located the strip of about five acres of land by an actual survey on the ground, at which time the true south boundary line of plaintiffs' land was found as above indicated; that said strip of five acres had already been leased by plaintiffs to Moore and one-half of the royalty thereunder sold by the instruments above referred to. That at the time of the execution of the written contract with Pace and Gardner, plaintiffs owned only a one-half interest in the royalty to the tract in controversy.

There was a further finding that plaintiffs' allegations of fraud, misrepresentation and failure or insufficiency of consideration were not sustained by the evidence and that the certificate of acknowledgment to the deed was true and correct.

The court concluded as a matter of law that plaintiffs owned a good title to all of the land north of the occupation fence line when they leased it to Moore and sold to him one-half of the royalty therein and it was the intention of all parties that the instruments passing these interests to Moore should cover all lands north of the occupation fence line; that since plaintiffs only owned one-half of the royalty at the time of the conveyance to Pace and Gardner, the latter named defendants could only recover two-thirds of that one-half interest.

It will be noted that the court made no findings or conclusions concerning the rights of plaintiffs by reason of their alleged claim of mistake in connection with the drafting of the written instrument of agreement.

 Plaintiffs contend under assignments of error here that under the findings of fact by the court that it was the intention of the parties to the written contract that Pace and Gardner should have conveyed to them a two-thirds interest in any excess acreage of unleased lands belonging to plaintiffs, and the further findings that the lands claimed were leased to Moore, the court should have concluded as a matter of law that defendants got nothing under the deed of conveyance executed in performance of the contract. Because they say, by those findings, supported by competent evidence, their plea of mutual mistake should have been sustained.

The pleadings in this respect were insufficient to support a verdict upon that theory. We have quoted plaintiffs' plead-

ings in regard to mutual mistake in the former part of this discussion. Our statutes, at Article 2211, Vernon's Ann.Civ. St. art. 2211, provides that the judgment shall conform to the pleadings and the verdict, if any. The findings of fact are equivalent to the verdict of a jury when one is had.

The general demurrer plead by defendants, even though it had been presented and acted upon by the court (which was not done) would not have furnished sufficient grounds for striking the plea, although imperfectly made, as it was. It was presented in an alternative way and could only be reached by a special exception. To have sustained a general demurrer would have stricken the primary and affirmative pleas made, and this would have been error. If a special exception, leveled at the sufficiency of the plea of mutual mistake, had been presented, it doubtless would have been sustained, at which time plaintiffs could have amended to meet the rulings of the court. 33 Tex. Jur., p. 560, sect. 126; United Appliance Corp. v. Boyd, Tex.Civ.App., 108 S.W.2d 760.

■ The rule of equity which affords a party relief as against a written instrument must depend upon fraud or mutual mistake. To rely upon either ground, a plea must be more than a mere conclusion of the pleader, but must contain allegations of fact which, if true, will amount to one or the other or both. The evidence must support the plea. It will be observed by the plea of mutual mistake in this case, as quoted above, there is not so much as a positive assertion by the pleader, that there was a mutual mistake entering into the consummation of the written instrument sought to be reformed. It was said to be the result of a mistake on the part of the defendants or their attorney. There are sufficient allegations of fraud and misrepresentations, which could have been gathered from the pleadings to be considered in connection with an allegation of fraud and mutual mistake, but those allegations are not alleged to have induced plaintiffs to concur in the execution of the instrument through a mistake on their part. It is not sufficient ground for reformation that one of the parties has made a mistake, but it must be a mutual one. It must further appear that the contract sought to be reformed did not express the meaning

which all the parties understood it was to contain, Yantis v. Jones, Tex.Civ.App., 184 S.W. 572; Darden v. Vanlandingham, Tex.Civ.App., 189 S.W. 297, writ refused; Henson v. Peterson, Tex.Civ.App., 218 S.W. 126, writ refused; Anderson v. Walton, Tex.Civ.App., 26 S.W.2d 356; Sun Co. v. Vinton Petroleum Co., 5 Cir., 248 F. 623, 160 C.C.A. 523, certiorari denied 247 U.S. 514, 38 S.Ct. 580, 62 L.Ed. 1244. A deed cannot be set aside on grounds not pleaded. Cleveland v. Stanley, Tex.Civ.App., 177 S.W. 1181.

We do not wish to be understood as holding that the pleadings or proof in such an equitable proceeding as this should be strictly confined to the very broad and general rules referred to herein. There are other facts and circumstances, which, if alleged and proved, would entitle the parties to equitable relief sought here. We discussed some of these principles in the recent case of Thomas v. Baptist Foundation of Texas, Tex.Civ.App., 123 S.W.2d 440, pages 448, 449, writ dismissed, correct judgment.

■ The deed in the instant case is in conformity with the written contract, and plaintiffs could not have the deed canceled, as prayed for, unless and until the court could, in equity, reform the contract agreeable with the oral agreement contended for by plaintiffs. We then are more concerned in this appeal with plaintiffs' right to have the contract reformed, upon the equitable grounds of fraud and mutual mistake. These rights are described in the text of 36 Tex.Jur., p. 717, sect. 4, where it is said: "Courts have no power to reform a contract in advance of attempted enforcement, except insofar as this may be accomplished by correction of the instrument relied on as the evidence of the agreement of the parties. If, however, the writing to which the contract has been reduced contains an error, due to accident, mistake or fraud, so that it does not truly record the understanding, equity may make it speak the true agreement, reforming it to that end."

If, upon another trial, the pleadings are amended so as to enable the court to consider the plea of mutual mistake in the written contract, as is attempted by plaintiffs, to bring before us on this appeal, it will become the duty of the trial court, and we have no doubt that he will observe it, to hear the evidence thereon and

find the facts as warranted by the evidence and to render judgment accordingly.

There are other material factors which may properly arise upon another trial; they being, an observation by the court of the rules applicable to the construction of field notes and descriptions contained in conveyances. If none of the recognized exceptions are found to exist, the court will give preference to natural objects, artificial objects and course and distance in the order named. One of the well recognized exceptions is said to be in cases where course and distances are more reliable than objects called for but have disappeared and the location thereof is dependent upon circumstances and the recollection of persons as to their former locations. Browning's Adm'x v. Atkinson, 37 Tex. 633; Ratliff v. Burleson, 7 Tex.Civ.App. 621, 25 S.W. 983; Houston Oil Co. v. Choate, Tex.Civ.App., 215 S.W. 118; Id., Tex.Com.App., 232 S.W. 285.

[11] It is also the settled rule in construction of descriptions in deeds that where the instrument describes land by metes and bounds and marked corners, the description controls over the number of acres recited therein to be included. Leon & H. Blum Land Co. v. Dunlap, 4 Tex. Civ.App. 315, 23 S.W. 473; Standefer v. Miller, Tex.Civ.App., 182 S.W. 1149; Collins v. Warfield, Tex.Civ.App., 140 S.W. 107; Rand v. Cartwright, 82 Tex. 399, 18 S.W. 794.

If, upon another trial, there are pleadings and evidence to support plaintiffs' contention of fraud and mutual mistake as to the written contract, the court will take cognizance of and give consideration to, the defensive matters of innocent purchaser, estoppel and limitations; but we deem it unnecessary to discuss these matters at length as the record now stands.

There is yet another phase of this record which is not quite clear to us. It is this: if plaintiffs should, upon another trial, by their pleadings and proof, show themselves entitled to such a reformation of the written contract with Pace and Gardner, that Pace and Gardner were obligated to drill any lands recovered by them, and if the evidence again shows, as it appeared at the last trial, that the land in controversy is covered by the Moore lease, then Moore's rights are

involved, and he or his assignee, if any, would become necessary parties to this suit, to the end that all rights of interested parties could be determined by the court.

We are convinced that the ends of justice will be best subserved if we reverse and remand this cause for another trial; at which time the pleadings may be amended and the evidence more fully developed, and so that the case may be tried upon all theories, apparently involved. We are warranted in pursuing this course by the following authorities: Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178; Colbert v. Dallas Joint Stock Land Bank, 129 Tex. 235, 102 S.W.2d 1031; Sun Oil Co. v. Gunter, Tex.Civ.App., 125 S.W.2d 338, and cases there cited.

The judgment of the trial court is accordingly reversed and the cause is remanded for another trial.