**STATE BANK & TRUST CO. v. W. O. HORN & BRO., INC.  (No. 7121.)**

Court of Civil Appeals of Texas. Austin. May 25, 1927.

**1. Garnishment ⚌158—Until judgment in garnishment proceeding, parties may file pleadings allowed by court and not prohibited by law, unless court's allowance is abuse of discretion.**

Until judgment is rendered in a garnishment proceeding, the court has jurisdiction over the case, and the parties may file pleadings which are not prohibited by law, and which the court allows so long as discretion in such allowance is not abused.

**2. Garnishment ⚌158—Failure to file affidavit controverting garnishee's answer within statutory time prescribed held waived by garnishee's permitting trial without objection (Rev. St. 1925, art. 2092).**

Where no objection was made to going to trial in garnishment proceedings on the affidavit controverting the garnishee's answer, the failure to file such affidavit within 15 days, as prescribed by Rev. St. 1925, art. 2092, subd. 11, was a mere irregularity, and was waived.

**3. Pleading ⚌333—Pleadings required to be filed within specified time may be filed thereafter before judgment.**

Though pleadings are required to be filed within specified time, they may be filed thereafter, provided the court has not in the meantime rendered its judgment.

**4. Garnishment ⚌158—Court held to have jurisdiction to render garnishment judgment, though affidavit controverting garnishee's answer was filed over six months after statutory time prescribed (Rev. St. 1925, art. 2092, subd. 11).**

Though the affidavit controverting the garnishee's answer was filed over six months after the 15-day limit prescribed by Rev. St. 1925, art. 2092, subd. 11, court held to have jurisdiction to render garnishment judgment, since a garnishee is not discharged immediately on filing an answer alleging nonliability, and until judgment the court has jurisdiction over the case.

**5. Garnishment ⚌158—Where garnishee voluntarily went to trial on issues formed by court, objection that one issue was not embraced in affidavit controverting garnishee's answer comes too late after final judgment (Rev. St. 1925, art. 4095).**

Where only one of issues denied in garnishee's answer was controverted by affidavit, but both issues were included by the court in forming issues for trial as directed by Rev. St. 1925, art. 4095, and were recited in the judgment, and garnishee voluntarily went to trial on both issues, an objection that one issue was not embraced in the affidavit controverting the garnishee's answer comes too late when asserted for the first time after trial and final judgment.

**6. Pleading ⚌432—When party goes to trial without objection on issues recited in judgment, necessity for specific pleading thereon is waived.**

Generally speaking, when a party goes to trial on issues recited in the judgment, and no objection thereto is shown in the record, this amounts to consent to trial on these issues without the necessity for specific pleading.

**7. Evidence ⚌16—Judicial notice will be taken that Ed. is an abbreviation for Edwin.**

Judicial notice will be taken that the abbreviation Ed. is commonly used for Edwin.

**8. Names ⚌5—Describing Edwin P. as Ed. in garnishment proceeding held to sufficiently identify defendant, though his father Edwin was also garnishee's customer.**

In a garnishment proceeding, where the garnishment affidavit and writ described the main defendant as Ed. Gaston, and intended to designate Edwin P., and the garnishee made no effort to determine whether Edwin P. or his father Edwin was meant, held that the main defendant was sufficiently identified, though both father and son were customers of the garnishee bank.

**9. Garnishment ⚌175—Judgment in garnishment proceeding should provide what writs shall issue, and not leave that matter to clerk's discretion.**

Judgment in garnishment proceeding should not leave the matter of the writs and processes to be issued to the discretion of the clerk of court, but should provide what writs shall issue.

**10. Garnishment ⚌175—Garnishment judgment held sufficient, though directing clerk to issue "such processes as are necessary."**

Garnishment judgment held sufficient, though the clerk of court was therein indefinitely directed "to issue such writs of execution and other processes as are necessary to effectuate the terms of this judgment."

**11. Costs ⚌238(2)—Appeal costs held not assessable against appellee because appellant secured correction in form of judgment not applied for below.**

Appeal costs held not assessable against appellee because appellant secured connection of form of judgment, where relief might have been had in court below if seasonably sought.

Appeal from District Court, Dallas County; E. E. Hurt, Special Judge.

Action by W. O. Horn & Bro., Inc., against the State Bank & Trust Company, as garnishee. Judgment for plaintiff, and the garnishee appeals. Affirmed.

Henry Yeager, of Dallas, for appellant.

Cockreil, McBride, O'Donnell & Hamilton, of Dallas, for appellee.

McCLENDON, C. J. Appeal by the State Bank & Trust Company, which we will call

---

⚌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the bank, from a judgment against it as garnishee in favor of W. O. Horn & Bro., Inc.

The bank urges four propositions, which we will consider in the order presented:

[1] (1). It is contended that, since its answer showing nonliability was filed September 4, 1923, and the controverting affidavit was not filed until April 3, 1924, the court was powerless to render the judgment.

This proposition is rested upon the following provision of subdivision 11 of article 2092, R. S. of 1925:

"The plaintiff in garnishment shall have 15 days after the garnishee's answer is filed within which to controvert the same if he so desires."

This provision is a part of the practice act of 1923, page 215, which relates to certain counties in the state, and applies to the district courts of Dallas county. This provision of the act has not been construed. The record shows that the parties went to trial on certain issues recited in the judgment, and no objection was made by either party to proceeding under the pleadings, the issues formed, and the evidence introduced. The point now urged by appellant is presented for the first time on appeal without assignment of error as fundamental. There is nothing in the language of the statute above quoted which intimates that the plaintiff in garnishment may not controvert the garnishee's answer after the expiration of 15 days. The manifest purpose of the provision was to give the plaintiff in garnishment 15 days as a matter of law within which to controvert the garnishee's answer, after which time the garnishee no doubt has the right, in the absence of a controverting affidavit, to have judgment entered discharging him thereon. But until judgment is rendered the court without question has jurisdiction over the case, and the parties may file pleadings or amended pleadings which are not prohibited by law, and which are allowed by the court, so long as discretion in such allowance is not abused.

[2] In the absence of objection to going to trial upon the controverting affidavit as filed, or of some showing of injury by permitting it to be filed and considered, we think the failure to file it within the time prescribed by law was a mere irregularity, and was waived.

[3, 4] The general rule is that, where pleadings are required to be filed within a specified time, they may be filed thereafter, provided the court has not in the meantime rendered its judgment. Bateman v. Maddox, 86 Tex. 546, 26 S. W. 51; Boles v. Linthicum, 48 Tex. 220; Stout v. Myers (Tex. Civ. App.) 242 S. W. 1109. We see no reason why this general principle should not apply to the statute in question. The garnishment statutes do not discharge the garnishee ipso facto upon filing an answer showing nonliability which is not controverted within a specified time. They require a judgment of the trial court to discharge the garnishee, and until such judgment is rendered the court has jurisdiction over the case. It may be true that the plaintiff in garnishment might lose the right to file a controverting affidavit to the garnishee's answer through laches, but clearly it cannot be held that the delay in the present case constituted such laches as a matter of law. The first proposition is overruled.

[5] (2). It is urged that the court was without power to render a moneyed judgment against the garnishee, because plaintiff in garnishment did not controvert that portion of the answer denying indebtedness to the defendant in the principal case, but only controverted that portion denying that the principal defendant owned stock in the bank.

The affidavit upon which the garnishment was based alleged that plaintiff in garnishment had reason to believe, and did believe that the bank was indebted and had effects belonging to the principal defendant, and that the latter was the owner of shares of stock in the bank. The writ required the bank to answer under oath with reference to indebtedness to and effects of the principal defendant, what other persons were so indebted or had effects, and the number of shares, if any, the principal defendant owned in bank. The answer of the bank covered by denial each of the matters as to which the writ required it to answer. The controverting affidavit merely alleged that plaintiff in garnishment had good reason to, and did, believe that the principal defendant owned at least ten shares of stock in the bank. The trial court's judgment recites that the plaintiff and defendant in garnishment appeared by their respective attorneys, announced ready for trial, and that the following issues were formed:

"As to the amount of stock held by the debtor mentioned in the writ of garnishment in the State Bank & Trust Company, and as to the amount of funds held by the State Bank & Trust Company at the time the writ of garnishment was served and the amount of funds which passed into the possession of the State Bank & Trust Company belonging to the debtor mentioned in the writ of garnishment, between the date of the service of the writ of garnishment herein and the date of the filing of the answer in garnishment herein."

Article 4095, R. S. 1925, provides:

"If the garnishee whose answer is controverted, is a resident of the county in which the proceeding is pending, an issue shall be formed under the direction of the court and tried as other cases."

[6] This article immediately follows that relating to traverse of the garnishee's answer. It was held in Kelly v. Gibbs, 84 Tex. 143, 19 S. W. 380, 563, that the allegations setting up the issues formed under this article need

not be under oath, and that by consent such issues might be submitted orally. There was no objection to the issues recited in the judgment upon which the parties went to trial, or to the evidence; and clearly the contention now urged was waived, unless the court was wholly without jurisdiction to render judgment based upon indebtedness of the garnishee to the defendant, in the absence of a controverting affidavit directed towards that particular matter. As noted above, the original affidavit upon which the garnishment was based alleged such indebtedness. This the bank specifically denied under oath. When the issues upon which the case was tried were formed, if there was any objection thereto, it should have been then urged. Generally speaking, when a party goes to trial upon issues recited in the judgment, and the record shows no objection thereto, this amounts to consent to trial upon the issues thus presented and to a waiver of the necessity for specific pleading thereon. Jurisdiction had already been obtained over the garnishee and the subject-matter embodied in the issues formed, by service of the writ. We can perceive of no inherent objection to a holding that the garnishee has the power to waive altogether a controverting affidavit as well as to waive the submission of any issues which the court might frame. No question of fundamental jurisdiction is involved in such holding, and the record in the present case negatives any injury thereby, for the judgment, in so far as concerns the amount of personal liability and ownership of stock, is based upon the uncontradicted showing of the bank's own books.

In Holloway v. Bank, 92 Tex. 187, 47 S. W. 95, 516, the Supreme Court held that the recovery against the garnishee is not limited to the grounds set forth in the affidavit for garnishment, and that the garnishee is required in every case to give full answer to all of the several matters required by the statutes and the writ, regardless of the grounds upon which the writ is sought. We think the principles announced in that case apply by analogy here. The garnishee had been brought into court upon the four statutory grounds set forth in the writ and controverted in the garnishee's answer. The court had jurisdiction over the subject-matter, and the parties and the garnishee voluntarily went to trial upon issues formed by the court and expressly recited in the judgment. Complaint that one of those issues was not embraced in the controverting affidavit comes, we think, too late, when asserted for the first time after trial and final judgment.

(3). The third proposition reads:

"It was error for the court to render judgment in favor of the plaintiff against the garnishee for $1,810.06 when it was shown that the writ of garnishment referred to Ed. Gaston and the evidence showed that both Ed. Gaston and E. P. Gaston were customers of the garnishee bank, but that E. P. Gaston was the person against whom the judgment was rendered in the main suit, while the real Ed. Gaston who was a customer of the garnishee bank had no connection with said suit."

The record shows in this regard the following: The judgment in the main suit was against Ed. Gaston and another, upon notes signed by him "E. P. Gaston." The garnishment affidavit and writ described the main defendant as Ed. Gaston. The undisputed facts were that Edwin Gaston was the father of Edwin P. Gaston; the latter was vice president, cashier, and a director in garnishee bank at the time the garnishment was sued out, and for some time thereafter. He usually signed his name in business transactions "E. P. Gaston," and it was he who was the real defendant in the main suit. Both the father and son were customers of the bank, but the father usually was a borrower. E. P. Gaston was often called and known as Ed. Gaston. Neither the president nor other officer of the bank made any effort to determine which of the two Edwin Gastons the judgment was against. The evidence will support a finding that Crawford, a member of the firm of attorneys who represented the bank in the garnishment proceedings, knew prior to the time the answer was filed that E. P. Gaston was the real defendant in the judgment. "Under the well-settled rule that the law recognizes only one Christian name, it has been repeatedly held that the insertion or omission of, or mistake in, a middle name or initial in a criminal as well as a civil proceeding is therefore immaterial." 29 Cyc. 265. This was the rule at common law, and has been repeatedly announced in this state. See McKay v. Speak, 8 Tex. 376; Stockton v. State, 25 Tex. 772; McDonald v. Morgan, 27 Tex. 503; Jones v. State, 50 Tex. Cr. R. 210, 96 S. W. 29.

[7] It is also well settled that "judicial notice will be taken of the ordinary and commonly used abbreviations of Christian names" (29 Cyc. p. 269), such as, for example, Eliza for Elizabeth (Goodell v. Hall, 112 Ga. 435, 37 S. E. 725; Jas. for James (Stephen v. State, 11 Ga. 225); Thos. for Thomas (Studstill v. State, 7 Ga. 2); Wm. for William (Linn v. Buckingham, 2 Ill. [1 Scam.] 451); Susan for Susanna (Trimble v. State, 4 Blackf. [Ind.] 435); Dan for Daniel (Sparks v. Sparks, 51 Kan. 195, 32 P. 892); Christ. for Christy or Christopher (Weaver v. McElhenon, 13 Mo. 89); Ellen for Eleanor (Exendine v. Morris, 8 Mo. App. 383); Alex for Alexander, and Jno. for John (Kemp v. McCormick, 1 Mont. 420); Hen. for Henry and Geo. for George (People v. Ferguson, 8 Cow. [N. Y.] 102); Rich. for Richard (State v. Dodson, 16 S. C. 453); Barney for Barnabas (Mc-

Gregor v. Balch, 17 Vt. 562). Many other instances might be cited. The following is from the Century Dictionary, under the prefix Ed as "a common element in proper names":

"An element in proper names of Anglo-Saxon origin meaning originally 'property' (in Anglo-Saxon 'prosperity' or 'happiness'), as Edward, Anglo-Saxon Eadweard, protector of property; Edwin, Anglo-Saxon Eadwine, gainer or friend of property."

Both the Funk & Wagnalls and Webster's International Dictionaries give "Ed." as a diminutive of the Christian name Edwin.

[8] Under the above well-recognized rules of law, we think the contention made with reference to the identity of the defendant in the writ of garnishment with the defendant in the main suit is without merit, and is overruled.

[9, 10] (4). The fourth proposition is to the effect that the following provision of the trial court's judgment constituted fundamental error:

"It is further ordered, adjudged, and decreed by the court that the clerk of this court be, and he is hereby, ordered and directed to issue such writs of execution and other processes as are necessary to effectuate the terms of this judgment."

It is contended in this connection that the judgment should have provided what writs should have been issued, and not left that matter to the discretion of the clerk.

The judgment is somewhat inartfully drawn, but we think what the court intended to adjudicate appears with sufficient clarity. The amount of the judgment against Ed. Gaston is found at $1,634.95, with 6 per cent. per annum interest thereon from September 3, 1918, and $4.50 costs. The amount to Ed. Gaston's credit in the bank when the writ was served, and his deposits thereafter up to the filing of the bank's answer, was found to be $1,810.06, and the number of shares he owned in the bank to be ten. The court rendered judgment against the bank for $1,810.06, with 6 per cent. interest per annum from date of judgment, and costs, ordered the ten shares of stock sold, the proceeds applied to the main judgment up to $287.15 (the excess of the main judgment over the personal judgment against the bank), and the balance to the satisfaction of the personal judgment against the bank, any balance on the main judgment up to the amount of the personal judgment against the bank to be enforced by execution against the bank.

[11] The general rule contended for by appellant, as stated above, is correct. No objection, however, to the form of the judgment was made in the trial court, and we would not feel warranted in taxing the costs of appeal against the appellee, merely to make this correction, when relief might have been obtained below if seasonably sought. See Merryman v. Bank (Tex. Civ. App.) 288 S. W. 840, and Williams v. Walker (Tex. Civ. App.) 290 S. W. 299, and cited authorities.

The appellant may, if it desires, have the quoted paragraph of the judgment reformed at its own cost, so as to prescribe the appropriate writs to be issued in its enforcement by submitting a proper draft thereof.

The trial court's judgment is affirmed.

Affirmed.