[Civ. No. 3025.   Fourth Dist.   Mar. 24, 1943.]

GOODWIN J. KNIGHT, Respondent, v. D. BERGER, Appellant.

H. E. Schmidt for Appellant.

George W. Wilson & Borton, Petrini, Conron & Borton and Reynolds & Painter for Respondent.

BARNARD, P. J.—This is an action to quiet title to certain mining claims in Kern County. The plaintiff is the owner of the Elephant Lode, the Hope Lode and the Excelsior Lode mining claims, having acquired title through mesne conveyances running back to the original locators. The Elephant and Hope claims were located on December 1, 1896, and the Excelsior claim on April 4, 1898. The defendant is the owner of the Bob-tail claim which was originally located on March 25, 1897. The Bob-tail claim lies to the west of the main portion of the Elephant claim and of the northerly part of the Hope claim, and to the north of the Excelsior claim. While small portions of the Hope and Excelsior claims are involved in this action the main controversy, and the only one requiring consideration on this appeal, is as to the location of the boundary line between the Elephant claim and the Bob-tail claim, being the westerly line of the Elephant claim and the easterly line of the Bob-tail claim.

There is no evidence of any conflict with respect to this boundary line at the time these various claims were located and the uncontradicted evidence shows that at least as early as 1900 the northwest and the southwest corners of the Elephant claim, upon the location of which this controversy depends, were marked by monuments upon the ground in the exact position found by the court as the northwest and southwest corners of the Elephant claim. The location of this boundary line, as thus indicated, was not questioned by any of the successive owners of these claims for some 38 years. Sometime before 1924 the owners of the Elephant claim constructed a tunnel on that claim with its portal near the boundary line between that claim and the Bob-tail claim and running in a southeasterly direction. A short distance southeasterly from the portal of this tunnel a drift was constructed running to the right from this tunnel and toward

the Bob-tail claim. In 1924 a former owner of the Bob-tail claim obtained permission from the owners of the Elephant claim to use the front portion of this tunnel and the drift to the right for the purpose of extending that drift under the Bob-tail claim and removing ore from the Bob-tail claim by taking it through the drift and tunnel to the portal thereof. In 1926, a subsequent owner of the Bob-tail claim was given like permission to use this tunnel and drift and it seems to have been thus used for some years thereafter. It seems apparent that the use of this portion of the tunnel and of the drift by the owners of the Bob-tail claim eventually led to the claim of title now made by the defendant in the present controversy.

In 1930, the defendant became interested in the Bob-tail claim and later became its sole owner. In spite of the long continued recognition by her predecessors in interest of the boundary line between the Elephant claim and the Bob-tail claim, in the position as found by the court, the defendant in 1935 erected new corner monuments as the northeast and southeast corners of her claim, which monuments were well within the area of the Elephant and Hope claims as theretofore recognized. The new easterly boundary line of the Bob-tail claim, as thus claimed by the defendant, would take in a large portion of the Elephant claim, including the drift to which we have referred and that portion of the tunnel between its portal and a point well beyond the place where the drift takes off from the tunnel. The defendant then executed new location notices renaming her claim the "New Bob-tail" and describing its position by reference to the new corner monuments which she had erected. In 1936 the defendant applied to the United States Land Office for a mineral patent to the area within the lines of the New Bob-tail as marked on the ground by her in 1935, which area included portions of the Elephant, Hope and Excelsior claims. This action followed and in her answer the defendant alleged that since 1930 she is and has been in the continuous and exclusive possession of the New Bob-tail claim, as above described. The court found in all respects in favor of the plaintiff and the defendant has appealed from the judgment with an attempted appeal from an order denying her motion for a new trial.

The appellant, relying upon the well-known rule that the plaintiff in such an action must recover upon the strength of his own title and not upon the weakness of the title of his

adversary, first contends that the finding that the respondent is the sole owner of the Elephant claim is not supported by the evidence since an undivided one-fourth interest in the Elephant claim was conveyed in 1897 to one S. E. Cullen and that this interest has never been acquired by the respondent. It is claimed that by a deed dated April 27, 1897, one of the original locators of the Elephant claim conveyed an undivided one-fourth interest therein to one S. E. Cullen and that by another deed dated May 8, 1897, one Leslie E. Cullen conveyed this one-fourth interest to one George Tanner. While Tanner's interest passed by later conveyances to the respondent it is argued that there is no evidence that S. E. Cullen and Leslie E. Cullen were the same person, and no evidence of any conveyance from S. E. Cullen to Leslie E. Cullen covering this one-fourth interest. While the reporter's transcript shows the deed of April 27, 1897, as conveying this interest to S. E. Cullen the record conclusively shows that the name of the grantee was incorrectly copied by the reporter and that that deed actually conveyed the property to L. E. Cullen. It appears that the deeds of April 27, 1897, and of May 8, 1897, which had been recorded, were copied in longhand and certified by a deputy recorder and introduced in evidence and used in the trial of this action. These original exhibits, with others where the copying was done by the same deputy recorder, are before us. While the first initial of the grantee in the deed of April 27, 1897, as written by the deputy recorder, could be read as either an "S" or an "L" it appears beyond question, both from that exhibit and these other exhibits, that that initial was written for and intended to be an "L" and that the grantee in the deed of April 27, 1897, was L. E. Cullen and not S. E. Cullen. This appears from the way the capital letter "S" is written in this deed and in these other exhibits, and also from the way the letter "L" was written in other places by this deputy recorder. For instance, in the words "Los Angeles County" the capital "L" is identical with the first initial of the grantee in the deed of April 27, 1897, and the same situation appears in connection with the word "Lancaster" as written in one of these exhibits. The evidence shows that this one-fourth interest was conveyed to L. E. Cullen and that eleven days later Leslie E. Cullen conveyed that interest to Tanner. Both deeds were acknowledged before the same

notary public. There is not only a presumption that these parties were identical (Code Civ. Proc., sec. 1963; *McKinley Bros.* v. *McCauley*, 215 Cal. 229 [9 P.2d 298]), but the other evidence, with the only reasonable inferences therefrom, amply support that conclusion. Moreover, no attempt was made in the trial court to show that S. E. Cullen and Leslie E. Cullen were not the same person, no objection was made in the trial court when further evidence could have been produced, and such an objection may not be first urged on appeal. (*Shain* v. *Sullivan*, 106 Cal. 208 [39 P. 606].) It may be further observed in this connection that in addition to proving a complete record title the respondent proved a title in himself by adverse possession and the court so found upon ample evidence.

It is next urged that the evidence does not support the court's findings with respect to the position of the boundary line between the Elephant claim and the Bob-tail claim, upon the location of which this entire controversy depends. The record and briefs are voluminous and we will refer briefly and in general terms to portions of the evidence, without attempting a complete summary. The testimony of many witnesses, including some of the former owners of the Bob-tail claim, clearly discloses that since 1900 the northwest and southwest corners of the Elephant claim have been clearly marked and identified by monuments on the ground, which have remained in the same place, and from which the westerly boundary line of the Elephant claim has been not only clearly ascertainable but obvious to anyone interested in discovering its location. Three maps made by United States mineral surveyors in 1924, 1932 and 1936, respectively, were introduced in evidence. All of these show the boundary line between the Elephant claim and the Bob-tail claim as found by the court. Another surveyor, who made the map accepted by the court, testified that he surveyed the property in 1936 and that all of the corner monuments of the Elephant claim were then in position and as shown by him on his map. One of the surveyors testified that he surveyed the property in 1936 on the order of the Department of the Interior and that he found the corner posts and the west line of the Elephant claim as fixed and found by the court. Another surveyor testified that he surveyed the Bob-tail claim in 1932 at the request of its owner who desired to apply for a patent, that one of the original locators of that claim and this appellant

assisted him and gave him information, that he found the corners and side lines of the Elephant and Hope claims from marked posts set in the ground, and that his survey corresponded exactly with the boundary line as found by the court. Another witness testified that in 1900, while he was lessee of the Bob-tail claim, he asked the then owner of the Elephant claim to help him locate the line between the two claims; that they found certain monuments and "sighted" the line, finding it in the position as now found by the court; and that from 1900 to 1916 he had never heard anyone claiming the existence of any different line. He further testified that in 1915 he bought the Elephant and Hope claims and that the monuments were then in the same position as in 1900 and 1912, and where he again saw them in 1938, all being in accordance with the line as found by the court. Another former owner of the Bob-tail claim testified that in 1923 the stakes which are material here were in the same position, that in 1924 he had a survey made which confirmed the same line and that in 1938 these stakes were in the same position, all in accordance with the finding of the court. He also testified that in 1924 while he was operating the Bob-tail claim he got permission from the owners of the Elephant claim to use the tunnel and drift on that claim for the purpose of extending the drift on and under the Bob-tail claim and taking ore out through that tunnel. Also, that two years later, after he had sold the Bob-tail claim, the new owner thereof received permission to do the same thing. He further testified that in 1924, the owners of the Elephant and Bob-tail claims met and went over the ground, finding all corners and tracing the boundary line as now found by the court.

The original location notice of the Bob-tail claim, which was located after the Elephant claim, recites that it "joins the Elephant mine on the west." An amended location notice for the Bob-tail claim was filed in 1901, giving a specific description of the property, and the easterly line thereof corresponds exactly with the westerly line of the Elephant claim as found by the court. Nearly all of the subsequent deeds covering the Bob-tail claim, including a deed in 1936 by which this appellant acquired a part of her title to that claim, refer to the specific description given in the amended location notice filed in 1901, which corresponds with the line as found by the court.

There is abundant evidence that from 1900 to the date of the trial all corners which are material here have been visibly monumented, that the position of these monuments corresponds to the court's finding, that numerous predecessors of the appellant have known of the presence of these monuments and have recognized the boundary line as being in the position found by the court, and that the material facts were not questioned for nearly forty years. The appellant made no effort to prove that the corners of the Elephant claim had not remained monumented all these years in the position which supports the court's finding, and the uncontradicted evidence shows that there were not in 1935, and had not been from 1900 to 1935, any monuments or evidence of the existence of monuments at the points where she placed new monuments in 1935 in support of her claim to what she now calls the "New Bob-tail" claim. The appellant herself testified that the first time any monuments were erected to mark the New Bob-tail claim, as outlined by her, was in 1935 when she erected them.

The appellant incidentally claims that there is some evidence of an agreed boundary line in the position which she claims to be the actual boundary. There is no evidence of any such express agreement and her claim of an implied agreement rests on supposed inferences from a part of the evidence when other inferences therefrom are possible, and when the bulk of the evidence is directly to the contrary. The evidence discloses that prior to 1935 she herself did not believe that the line had been agreed upon in the position she now relies on and there is ample evidence that the line as fixed by the court has, since 1901, been indicated by continuously existing monuments, has been easily ascertainable and has been recognized by all.

The appellant's claim that she established a title to the disputed area by adverse possession is without merit. This claim largely rests on her use of the tunnel and drift to which we have referred. Not only was any such use a permissive one but, aside from the matter of conflicting evidence, she failed to prove either continuous or exclusive possession, failed to prove that she had paid the taxes or that none had been assessed, and failed to establish that the respondent knew or had any means of knowing that any partial possession on her part was adverse to him. For similar reasons, her contention that the evidence establishes a valid relocation

of the New Bob-tail claim, insofar as it affects the disputed area, cannot be sustained.

The appellant next contends that the court erred in denying her motion for a new trial, it being argued that her affidavits used in that connection disclose evidence "of such compelling force" as to require that a new trial be granted. It seems to be contended that this new evidence would demonstrate that the owners of the Bob-tail claim and not the owners of the Elephant claim made the excavations in the tunnel, to which we have referred, from the portal to a point past the mouth of the drift to the right and also in that drift itself. Not only is this contrary to the uncontradicted evidence in the record but certain proofs of labor relied upon as showing that fact were not only uncertain and indefinite as to where the labor was done but were filed before that tunnel and drift were excavated. Some of the evidence sought to be produced was actually introduced at the trial, much was a matter of record and readily available, and all of it is either cumulative, corroborative of testimony that was produced, or contradictory to evidence produced on the same subject and going to the same issues. Every material statement in the affidavits thus relied upon by the appellant was categorically denied by counteraffidavits, which fact is sufficient in itself to justify a denial of the motion. (*Monnette* v. *Title Ins. etc. Co.,* 107 Cal.App. 313 [290 P. 668].)  Moreover, there is an entire absence of any showing of reasonable diligence in discovering the alleged new evidence. The only reason given in this connection is that the appellant changed counsel after the trial of the action and that until she obtained new counsel she did not know the relevancy or materiality of the evidence in question. Lack of diligence clearly appears in that no effort was made to produce this evidence during more than nineteen months which elapsed between the date the action was filed and the date of trial, while she easily found the witnesses and the other evidence within about a month after the substitution of counsel was made.  The evidence said to be newly discovered, so far as material, directly relates to the issues of the proper position of the boundary lines and the possession of the disputed area, which issues were thoroughly gone into during the trial, including the matter of the construction of this tunnel. It may be further observed that in view of the convincing nature of the evidence produced by the respondent it could not be reasonably

expected that this new evidence, if it had been produced at the trial, would have affected or changed the result as reflected in the judgment which was rendered. No abuse of discretion appears in this regard. (*Waer* v. *Waer*, 189 Cal. 178 [207 P. 891]; *Pandolfo* v. *Jackson*, 12 Cal.App.2d 232 [55 P.2d 550].)

■ Some contention is made that the respondent is estopped from asserting title to the disputed area, based on the claim that the former owners of the Bob-tail claim excavated the tunnel and drift and removed ore from the disputed area without objection. Estoppel was not pleaded, no element of estoppel was proved, and the evidence is at least conflicting with respect to every fact in that connection. If the appellant and her predecessors actually took any ore out of the disputed area there is no evidence that such fact was known to the respondent or his predecessors. At all times the appellant and her predecessors knew or had ready means of ascertaining the position of the true boundary line between these properties and no valid reason appears for their doing any work on the disputed area, if we assume that such work was done.

All of the material findings are amply sustained by the evidence. The purported appeal from the order denying the motion for a new trial is dismissed. The judgment is affirmed.

Marks, J., and Griffin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 20, 1943.