We find nothing for our consideration. The indictment and all matters of procedure appear regular.

The judgment of the trial court is affirmed.

### ADAMS et al. v. GROGAN–COCHRAN LUMBER CO.

No. 5596.

Court of Civil Appeals of Texas. Amarillo.
March 27, 1944.

Rehearing Denied May 8, 1944.

Further Rehearing Denied June 12, 1944.

### FLETCHER v. STATE.

No. 22929.

Court of Criminal Appeals of Texas.
June 23, 1944.

McComb & Davis, of Conroe, for appellants.

Small, Arney & Small, of Austin, amicus curiae.

E. R. Campbell, of Houston, and Pitts & Liles and Horace Grogan, all of Conroe, for appellees.

HEARE, Justice.

This is a suit in trespass to try title brought by appellee, Grogan-Cochran Lumber Company, against S. A. McCall and numerous other parties, in which appellee sought recovery of title and possession of the A. Prather 640-acre survey in Montgomery County, Texas, except two specified tracts located therein. The defendant S. A. McCall, who is now deceased, disclaimed as to all the land sought to be recovered by appellee except a defined tract of about 84 acres described in his answer, as to which he pleaded not guilty and also interposed a plea of the 10-year statute of limitations and 25 years' open and notorious possession. All matters between the other appellants and appellee have been settled, leaving only the appeal of Mrs. Florence A. McCall, administratrix of the estate of S. A. McCall, deceased. Trial was before a jury, but at the close of the evidence the trial court instructed a verdict in favor of appellee and entered judgment thereon which is sought to be reviewed by this appeal. One of the tracts excepted by appellee in its trial petition was a 21-. acre tract which is also referred to as the Mayo tract. By a docket equalization order of the Supreme Court, the case on ap-.

peal has been transferred to this court from the Ninth District.

█ The use of onionskin paper in appellee's original typewritten brief violates the provisions of Rule 417, Texas Rules of Civil Procedure. In view of the fact that this rule has only recently been amended, we are considering the brief, but this rule will hereafter be strictly enforced in this court.

Appellant, by her first and second points of error, challenges the sufficiency of appellee's proof, either to show title in appellee or to show the location of the lands purported to be described in the deeds under which appellee claims title. These contentions involve the sufficiency of two deeds in appellee's chain of title. The following is a sketch of the A. Prather Survey, reconstructed by us from the evidence as we view it:

1839, and describe a 640-acre tract in a square with its four corners resting directly at the four cardinal points of the compass. Patent to this tract, dated February 25, 1870, and signed by Governor Edmund J. Davis, was granted to J. B. Miles, assignee of Prather. Miles conveyed the tract to Isaac Decker by deed dated August 25, 1854. Two deeds were executed on February 1, 1870. Isaac Decker deeded to Mat Steussey the northwest 250 acres, being a tract 742.1 varas wide and 1900.8 varas long. On the same date Mat Steussey deeded to Isaac Decker the southeast 390 acres of the section, being a tract 1158.7 varas in width and 1900.8 varas in length. Each deed carried the metes and bounds description, tying to boundary lines of the tract and referring to lines of adjoining tracts. It is clear that these deeds constitute a division of the section into two tracts, and together they embrace the en-

Field notes of the survey made for Azariah Prather are dated December 20, tire Prather survey. Their divisional line runs from point G north 45 degrees east

across the survey to point F parallel to the northwest and southeast boundaries. Approximately six months later, by instrument dated July 28, 1870, Isaac Decker conveyed to Marcus Amsler, Jr., Marcus Amsler, Sr., Edward Amsler, and John P. Byrnes the following:

"The two following described pieces or tracts of land to-wit:

"Three hundred and eighty acres, part of the A. Prathers H. R. situated on Mill Creek in Montgomery County, and three hundred and sixty nine acres, Thomas P. Havys augmentation, lying south of and adjoining the A. Prather survey above described both tracts together containing 749 acres be the same more or less. Deeds and patents to which are herewith delivered and declared and made part and parcel of this deed and to which reference is hereby made for further description of said land as to metes and bounds * * *."

The sufficiency of this last named deed is challenged by appellant. By instrument dated January 31, 1872, approximately eighteen months after the execution of the deed from Decker to the Amslers and Byrnes above described, a deed was given by Marcus Amsler, Marcus Amsler, Jr., and J. P. Byrnes to Gustof Mascheke, Henry Sherer, Henry Hoffman, and Julius Thomas Shefsky "commencing business under the name and style of Gustof Mascheke & Co.," conveying three tracts of land. The second tract described is "390 acres of land, beginning at the south corner of A. Prathers survey on the North West Line of the above described Hensley survey; Thence North 45 West 1158 varas; Thence North 45 East 1900 1/8 varas to the South East line of said Prathers survey; Thence South 45 E. with Prathers line to his East corner 1158 7/10 varas; Thence South 45 West with Prathers South East line 1900 8/10 varas to the beginning, containing three hundred and ninety acres part of said A. Prathers survey." The instrument further recites, after the description of the third tract, that "the other two tracts of land being conveyed to us by Isaac Decker by deed dated 28th day of July 1870, which deeds & chain of titles is herewith delivered to said Gustof Mascheke & Co. * * *" With the exception of the reference to Prather's southeast line in the second call, which is obviously an error, and with a slight variation in the vara fractions in the first two calls, the description in this deed is identical with the description in the deed from Mat Steussey to Isaac Decker dated February 1, 1870, and described above.

Appellant contends, with reference to the Decker to Amsler deed, that there is nothing to indicate what instruments were delivered with the deed, their dates or the names of the grantors or grantees, or any other data by which they might have been identified and, therefore, the reference is so vague and uncertain that verbal testimony would be required to give it meaning.

■ In our opinion, the reference in the questioned deed is sufficient, when considered with the chain of title, to identify the tract sought to be conveyed. This reference to patents and deeds, which were made a part of the questioned instrument, must be given meaning if it is possible so to do. In so far as the Prather tract was concerned, the chain of title consisted of the patent to J. B. Miles, the deed from Miles to Decker conveying the entire tract, and the deed from Steussey to Decker describing Decker's portion of the Prather survey by metes and bounds. The two tracts conveyed by the Decker to Amsler deed are first generally specified, the first as being "part of the A. Prathers H. R. situated on Mill Creek in Montgomery County," and the other lying south and adjoining the A. Prather survey in the Thomas P. Havys (Davys) augmentation. "Deeds and patents to which" can only mean, in so far as the Prather tract is concerned, the patent to the Prather survey, the deed from Miles to Decker conveying the entire survey, and the deed from Steussey to Decker conveying a part of the survey, the part conveyed being described by metes and bounds. It is not a strained construction of the deed to hold that Decker intended to, and did, convey to Amsler and Byrnes the exact land described by metes and bounds in the deed from Steussey to Decker. As pointed out in the helpful brief filed herein by amicus curiae, any reasonable person is justified in concluding that these three instruments, the patent to Miles, the deed from Miles to Decker, and the deed from Steussey to Decker, were the ones delivered by Decker to Amsler and he would be justified in looking to them for the description of the lands sought to be conveyed. All of these instruments were introduced in evidence. No objection was offered to the deed from Steussey to Decker. By applying the field notes set out therein, that portion of the Prather survey

sought to be conveyed can be located on the ground.

▇▇▇▇ Appellant contends that the aforementioned Decker to Amsler deed is void because it attempts to convey an undefined 380 acres out of a larger tract, that it contains a description only by quantity and as being part of a larger tract with nothing whereby to identify what specific portion of the larger tract is intended to be conveyed. Appellant cites and discusses a number of authorities in support of such contention. We have examined all of these authorities and find that they all involve deeds attempting to describe land or interest in land by quantity only, each out of a larger tract, and they would be controlling authorities had we not concluded that the Decker to Amsler deed refers by its terms to the Steussey to Decker deed where metes and bounds description of the tract may be found. The fact that the Decker to Amsler deed specifies only 380 acres, whereas the Steussey to Decker deed provides for 390 acres, does not affect the validity of the Decker to Amsler deed, because a metes and bounds description of the tract is available in the Steussey deed. Where a deed describes by metes and bounds, the specification of quantity conveyed will be treated as descriptive only and will not have controlling effect. Rand v. Cartwright, 82 Tex. 399, 18 S.W. 794; Standefer v. Miller, Tex.Civ.App., 182 S. W. 1149, and authorities there cited, at page 1152; Ostrom v. Jackson, Tex.Civ. App., 127 S.W.2d 987.

We therefore overrule appellant's contention that the deed from Decker to Amsler and Byrnes is void for uncertainty of description.

The next deed challenged by appellant is that from Mathias Steusey to Gustof Mischke, dated ———— 22, 1872, and containing the following for description:

"Ninety two acres part of A. Praters survey, purchased by me from Isaac Decker, beginning at the divisional corner between myself and the lands purchased by Amsler & Byrnes from said Decker out of the A. Prater survey; Thence South 45 deg. West with the South East boundary line of the Prater Survey Two hundred and seventy six varas to a stake on said line from which a pine bears south 10 E. 1 vara dist. marked S. and another pine bears N 40 E. 1 vara dist; Thence North 45 E 1900 8/10 varas to the divisional line between Prater and John B. Richards sur-

vey, a stake in said line from which a forked pine marked S. bears N. 61 W. 7 4/10 varas 'vas' dist. and another double pine bears south 4 W. 5 varas dist. marked M. M. and another double pine bears North 10 West 3 3/10 vas. dist. marked C; Thence South 45 E. with said line to Amsler & Byrnes West corner; Thence South 45 W. with Amsler and Byrnes line to the place of beginning, containing Ninety Two acres."

The conflicting calls in this description are apparent. The Richards survey joins the Prather survey on the northeast. It is impossible to give effect to the second call as to terminal point in the divisional line between the Prather and Richards surveys if the course of south 45 deg. west is used in the first call, regardless of the starting point of the first call. Likewise, it is impossible to give effect to the course "with the southeast boundary line of the Prather survey" in the first call if the questioned survey begins at either divisional corner between the Steussey land and the Amsler and Byrnes land. The divisional line between the Prather and Richards surveys is known. The divisional line between the Steussey land and the Amsler and Byrnes land in the Prather survey was established by the deeds from Decker to Steussey and Steussey to Decker, each dated February 1, 1870. This divisional line runs from point F, located in the divisional line between the Prather and Richards surveys 742.1 varas from the north corner A, and 1158.7 varas from the east corner D, of the Prather survey, thence south 45 degrees west to point G in the southwest boundary line of the Prather survey, said point G being 742.1 varas from the west corner B, and 1158.7 varas from the south corner C, of the Prather survey. The first call, therefore, in order to commence at a divisional corner between the Steussey lands and the Amsler and Byrnes lands must commence either at point F or at point G. Point F could not possibly be used as the starting point because that would wholly nullify the remaining three calls. That leaves point G as a starting point. The first call as to course and distance is "south 45 deg. west 276 varas." To give effect to the course in this call is to nullify the second call because the course of the second call is exactly the reverse of the course in the first call, and to proceed south 45 degrees west 276 varas, then to retrace north 45 degrees east 1900.8 varas encloses no land and fails by a distance of 276 varas to reach the known ter-

minal line. It is therefore apparent that the course in the first call is erroneous. The only alternative courses from point G that will permit the use of the second call are, north 45 degrees west or south 45 degrees east. Taking the course of south 45 degrees east and proceeding 276 varas, thence north 45 degrees east 1900.8 varas to the divisional line between the Richards and Prather surveys reaches the divisional line and satisfies the second call as to course and distance. But the third call is nullified as to course if the starting point is ever to be reached. Then taking the other alternative of course from point G and proceeding north 45 degrees west with the southwest boundary line of the Prather survey (instead of south 45 degrees west with the southeast boundary line of the Prather survey as recited in the deed), 276 varas to point E; thence north 45 degrees east 1900.8 varas to point K in the divisional line between the Prather and Richards surveys fully satisfies the second call. The third call, thence south 45 degrees east with the Prather and Richards divisional line to the Amsler and Byrnes west corner, is satisfied except as to the descriptional word west. The west corner was the starting point and therefore this must be made to read north corner (point F) and, as changed, is fully satisfied. The fourth call, thence south 45 degrees west with the Amsler and Byrnes line to the place of beginning, may then be satisfied and we have a completed survey around a parallelogram 276 varas wide .northwest and southeast and 1900.8 varas long northeast and southwest, located on and tied to the known divisional lines between the Prather and Richards Surveys and between the Steussey lands and Amsler and Byrnes lands. A computation shows the area embraced to be 92.8 acres, which we feel is accurate enough to satisfy the descriptive recitation of 92 acres in the deed.

It will be noted that the required changes in the deed as written are three. The course in the first call is, north 45 degrees west instead of, south 45 degrees west; the descriptive boundary line of the Prather survey in the first call is the southwest instead of the southeast boundary line; and the descriptive corner in the third call is the Amsler and Byrnes north corner instead of the Amsler and Byrnes west corner.

It was the manifest intention of the grantor to convey a 92-acre tract which he owned in the A. Prather Survey lying contiguous to the Richards Survey divisional line on one end and lying contiguous to the Amsler and Byrnes line on one side. It was also the manifest intention of the grantor to convey a tract 1900.8 varas in length and 276 varas in width. This intention can be made effective by making the three changes in the field notes as above outlined.

■ "The rule for construction of deeds is: That, where there is an evident mistake in the calls, the court must, if practicable, find and correct the error, so as to give effect to the deed." Poitevent v. Scarborough, 103 Tex. 111, 124 S.W. 87, 88.

■ One of the leading authorities for the proposition that even an omitted call may be supplied in order to carry out the manifest intention of the parties is Mansel v. Castles, 93 Tex. 414, 55 S.W. 559.

■ "In determining this issue of mistaken call, resort to other calls, lines, quantity, etc. of these and surrounding surveys, was eminently proper." White v. Smith, Tex.Civ.App., 67 S.W. 1028, 1029.

Other authorities equally convincing, but from which quotations will not be given, are: William Carlisle & Co. v. King, 103 Tex. 620, 133 S.W. 241; Easterling v. Simmons, Tex.Civ.App., 293 S.W. 690, error refused; Krider v. Hempftling, Tex. Civ.App., 137 S.W.2d 83; Matador Land & Cattle Co. v. Cassidy-Southwestern Commission Co., Tex.Civ.App., 207 S.W. 430

■ We therefore conclude that the court below did not err in accepting the deed from Isaac Decker to Marcus Amsler et al., dated July 28, 1870, and the deed from Mathias Steusey to Gustof Mischke, dated —— 22, 1872, as valid links in appellee's chain of title. Appellant's first and second points will therefore be overruled.

Appellant, by third point, assigns as error the action of the trial court in defining, in the body of the judgment as entered, the excepted 21-acre tract, using the metes and bounds description of said tract as contained in appellee's petition. This petition, upon which the case was tried, described the A. Prather Survey, but excepted therefrom two tracts, one of which is as follows:

"And 21 acres of land owned by Charles Mayo's heirs by virtue of a deed from Frederick Necker to Charles Mayo, dated October 8, 1875, recorded in Vol. 1, page 580, Deed Records of Montgomery County, Texas, described by metes and bounds as follows:

"Beginning at a stake in the SBL of an old 250 acre tract deeded to Mat Steussy by Isaac Decker February 1, 1870, said point of beginning for the 21 acres being more specifically designated as follows: S 45 E 2061.4 ft, and N 45 E 1577 ft from the W corner of said Prather survey;

"Thence N 45 E 997 ft to a stake on the E bank of Mill Creek;

"Thence with the meanders of said E bank as follows: S 42 E 91.9 ft; S 17 deg. 58' E 451 ft; S 31 E 161 ft; S 87 3/4 E 118 ft; S 27½ E 231 ft; S 11 W 261 ft; S 40 deg. 42' W 198.2 ft; S 54 deg. 49' E 173.3 ft; S 28 deg. 55' E 84.3 ft to a stake on the E bank of said creek;

"Thence N 59½ W 1400 ft to the beginning, containing 21 acres of land, more or less."

This is shown on the plat as tract S–T–R. The judgment, as entered in favor of appellee, excepted the above-described tract from the judgment, using the metes and bounds description as above set out.

Appellant, as defendant, introduced in evidence the deed referred to in the above description, being the deed from Fredrick Necker to Charles Mayo, dated October 8, 1875. The description as contained in that deed is as follows:

"* * * part of the H. R. 640 acres Azariah Prather survey situated on both sides of Mill Creek in Montgomery County, beginning 5 vrs. S. of the old ford known as the Prater and Owens old ford on Mill Creek, a stake in the E. bank of the Creek from which 2 burches mkd. M. opposite on the E. Bank; thence N. 59½ W. 504 vrs. to a stake in the E. B. line of a 200 acres tract purchased by Muschke from Mat Steussey out of the Prater survey; thence N. 45° E. with the said 200 acres line to the E. bank of Mill Creek, to a stake cor. in said line and in the edge of the water on the E. side of Mill Creek; thence with the meanderings of the E. Bank of Mill Creek to the place of beginning, containing 21 acres more or less * * ."

In order for the trial court to be warranted in giving an instructed verdict and entering the judgment which was entered, excepting the 21-acre tract by the description used in the judgment, it was necessary for the court to interpret the Necker deed and determine, as a matter of law, that the east boundary line of the 200-acre tract purchased by Muschke from Mat Steussey,

referred to in said deed, is the same line as the south boundary line of an old 250-acre tract deeded to Mat Steussey by Isaac Decker on February 1, 1870, and being the line referred to in the judgment. This would be the line G–F. We have carefully reviewed the record on this issue and it is our opinion that such an interpretation, as a matter of law, could not be placed upon the deed from Necker to Mayo, but that it is a fact issue as to whether or not the east boundary line of the 200-acre tract referred to in the Necker deed is the same line as the south boundary line of the 250-acre tract referred to in appellee's pleading and in the judgment. The location of the northwest boundary line of the 21-acre tract excepted in the judgment is in issue.

Under the theory of the appellant, the southwest boundary line of the 21-acre tract lies more northeasterly than the same boundary line, R–S, as defined in the judgment, and it is the contention of the appellee that appellant is not injured by the description in the judgment in view of the fact that the judgment allows appellant a strip of land between the southwest boundary line of the 21-acre tract, as contended by him, and the southwest boundary line of the 21-acre tract as defined by the judgment. This would be true, and the point would be overruled, if there were not a controversy about the location of the northwest boundary line of the 21-acre tract. Appellant contends that, under the terms of the Necker to Mayo deed, the northwest boundary line of this 21-acre tract is some distance northwest of the northwest boundary line, S–T, of the 21-acre tract as defined by the judgment. On April 28, 1875, Gustof Muscheke owned the 390 acres constituting the southeast 390 acres of the Prather survey, being tract G–F–D–C. On that date he joined F. Schutz in a conveyance to Fred Necker, conveying the 21-acre tract which was later conveyed by Necker to Mayo, but at that time, as has heretofore been determined, Muscheke also owned the 92½-acre tract, G–F–K–E, heretofore described in the deed dated ——— 22, 1872, from Mathias Steusey to Gustof Mischke. The names, Mischke, Mueschke, Muscheke, and Muschke, in this record must all be considered to be the same name. It is evident that the names are of Germanic origin and they are idem sonans. The German "u," if marked with an umlaut, is pronounced as though it were a short "i," or at least that is as

near as the sound can be described with English characters. It is conceivable that Muscheke, owning both the 390-acre tract and the 92½-acre tract, which have been determined to be contiguous, may have included part of the 92½ acres in the 21-acre tract grant. The testimony of the surveyors concerning the correct location on the ground of the northwest boundary of the 21-acre tract is conflicting. Appellant's surveyor, Seyle, testified about finding two birch trees, marked M, corresponding in description and location to those referred to in the Necker deed. They would establish the southeast corner of the 21-acre tract some distance north of point R. A survey of the 21-acre tract from that point, made by Seyle, establishes the southwest and northwest boundaries as indicated by the broken lines on the plat. Smitherman, appellee's surveyor, admits that line R–S was so located as to make the tract with S–T as its northwest boundary and Mill Creek as its east boundary contain 21 acres. Therefore, appellee's contention, that the east boundary line of the 200-acre tract, as referred to in the deed from Necker to Mayo, must necessarily refer to, and be the same as, the south boundary line of the 250-acre tract referred to in appellee's pleadings and in the judgment, is subject to dispute. Whether or not such is the case is an issue of fact to be determined in the trial court. It is our opinion that the trial court was not warranted in using the description of the 21-acre tract as used in the judgment for the purpose of exclusion except upon a jury finding that the two lines in question are identical, and the third point of error raised by the appellant will be sustained to the extent of ordering a reversal and a remand of the case for a new trial for the purpose of determining the fact issues involved.

By her fourth and fifth points of error, appellant complains of the action of the trial court in instructing the jury to return a verdict in favor of appellee against the appellant, contending that under appellant's limitation plea under the ten-year statute, the uncontroverted evidence showed that S. A. McCall and the persons under whom he held title had peaceable and adverse possession of the land described in his answer, cultivating, using, and enjoying the same for ten years and more prior to the institution of plaintiff's suit or, at least, that the evidence raised a jury issue and an instructed verdict in favor of appellee was therefore not warranted.

The record reveals that Fredrick Necker deeded to Charles Mayo the 21-acre tract heretofore described by instrument dated October 8, 1875, and that Mayo and his wife, who were elderly negroes, lived on this tract until the death of Charles Mayo; that Sally Mayo continued to live there, later marrying Tom Linton. McCall holds under the heirs of Charles and Sally Mayo by deeds executed in November 1940. The land described in these deeds includes the 21-acre tract excepted from appellee's petition and an 84-acre tract which appellant claims by limitation. These two tracts are marked on the plat by Z–W–X–Y. The testimony is voluminous, but we have carefully reviewed the same and we are unable to reach any conclusion except that the Mayos never intended to claim or occupy any more land than that to which they were entitled under their deed from Fredrick Necker. It is apparent that these uneducated old negroes probably had very little conception as to area and that they believed they were on their own land. There is some testimony showing that the last old site of their cabin was located some footage south and west of their southwest line. There is testimony concerning some blazes on trees, which appellant contends outlined the 84-acre tract and which she contends was claimed by the Mayos as their own. The conclusion is inescapable, however, that they really intended to claim only the land described in their deed. They paid taxes for a number of years and the acreage is described in various amounts from 22 acres to as much as 50 acres in one year, but never as much as 100 acres. When the Mayos made a claim for the value of timber that had mistakenly been cut on their lands they produced their deed to prove the extent of their holdings. It would serve no useful purpose to attempt to detail all of the testimony, or even the substance of the same, bearing on the issue. Suffice it to say that we are in accord with the trial court's holding that the evidence was insufficient to raise the issue of an adverse claim by the Mayos to the 84-acre tract, the title to which appellant contends has ripened through limitations. It is our considered opinion that the claim of the Mayos to any land in excess of the 21 acres provided for in the deed from Necker to Mayo was the result of a mistaken idea

on their part as to the location of their boundaries, and the title to the same would be controlled by the rule governing encroachments. Their possession of such land, therefore, would be merely incidental or subsidiary to their principal possession. Federal Crude Oil Co. v. Yount-Lee Oil Co., Tex.Civ.App., 73 S.W.2d 969, error dismissed. It would therefore be incumbent upon appellant to plead and prove the amount of the land actually occupied by the claimants before the court would be justified in awarding to appellant any part of the 84-acre tract claimed by her under the plea of limitation. Bracken v. Jones, 63 Tex. 184; 2 Tex.Jur. 200, et seq. Appellant's fourth and fifth points of error will therefore be overruled.

For the reasons stated, the judgment will be reversed and the cause remanded to the trial court for a determination of the fact issues in accordance with this opinion.

Reversed and remanded.

## On Motion for Rehearing.

Both the appellant and the appellee have presented motions for rehearing. The motion of the appellee complains of the action of this court in sustaining the appellant's third point of error. The appellee contends that the appellant, by her trial pleadings, disclaimed any interest in all of the land described in the appellee's trial petition except the 84-acre tract and as to that tract she pleaded not guilty and asserted a limitation title thereto; that she had been denied an affirmance of her limitation title as to the 84-acre tract and therefore, because of her disclaimer, the description of the Mayo 21-acre tract as excepted in the judgment could not be harmful to her. An examination of the appellant's pleadings reveals that in describing the 84-acre tract, to which she pleaded not guilty and which she claimed by limitation, the southwest and the northwest boundary lines of the 21-acre Mayo tract were named as boundary lines of the 84-acre tract and that she described them by referring to the deed from Necker to Mayo, dated October 8, 1875, and the recording thereof. The appellee did not use the metes and bounds description of the boundaries of the 21-acre tract as they were contained in the Necker to Mayo deed but, by reference, adopted the boundaries provided for in the deed and at the same time used a metes and bounds description of those boundaries different from the metes and bounds description as set out in the deed. Appellee contends this new metes and bounds description was established by a recent survey on the ground. We hold to our original opinion that the determination of the location of the northwest boundary line of the 21-acre Mayo tract is essential, not only to determine the extent of appellant's disclaimer, but also to determine the extent of appellee's recovery. The appellant's plea of not guilty put in issue the location of the southwest and of the northwest boundary lines of the Mayo tract. She was entitled, as a matter of defense, to have the location of the northwest boundary line of this 21-acre tract determined by a jury. The appellee's motion for a rehearing will therefore be overruled.

In the appellant's motion for a rehearing, complaint is made that in our original opinion we did not completely dispose of the appellant's first and second points of error presented in her original brief. By those points, the appellant complained of the action of the trial court in refusing to grant the appellant's motion for an instructed verdict predicated on the contention that the appellee, as plaintiff, had failed to prove title to any part of the lands described in the appellant's deeds and answer and had failed to prove the location of the lands purported to be described in the deeds under which the appellee claims title.

It will be seen that part of the 84-acre tract claimed by the appellant, and the title to which she put in issue by her plea of not guilty, lies within that part of the survey circumscribed by the lines E–K–A–B. The appellant contends that the appellee does not show a complete chain of title to that tract in so far as it embraces the part of the 84-acre tract claimed by the appellant. The chain of title runs by patent from the State of Texas to Miles, then from Miles to Decker, and from Decker to Mat Steussey. The sufficiency of the appellee's exhibits numbered 34, 63, 64, 65, 67, 73, and 75 to complete the chain of title to the appellee is challenged by the appellant.

It is our opinion that the trial court correctly interpreted the effect of the foregoing deeds by holding that the plaintiff had shown a valid chain of title to itself to all that part of the 84-acre tract claimed by the appellant embraced in tract E–K–A–B. The record, Plaintiff's Exhibit No. 4, shows a conveyance of the west part of the sur-

vey, 250 acres, from Isaac Decker to Mat Steussey. Mat Steussey conveyed to Emil Seebak, Plaintiff's Exhibit No. 34, a tract of land "being the W. side of a 200 acre tract purchased from Isaac Decker," being part of the Prather survey, and "beginning, at W. cor. of a 92½ acre tract sold to Gustaf Mischke & Co; Thence, N. 45 W. to the cor. of said Prather sur. which is also the S. cor. of Chas. Frazer sur; Thence, with the Frazer & the Prater S. 45 E. to the N. E. cor. of the Prater sur; Thence S. 45 E. to Mischke & Co. W. cor; Thence with Mischke & Co. line to the place of beginning, containing 108 acres more or less." The appellant contends that the court was not justified in construing this deed to the effect that the survey commenced at point E on the plat and went thence to point B, thence to point A, thence to point K, thence to point E. We do not agree with appellant in this contention. We are of the opinion that the trial court was warranted in construing the deed as referring for beginning point to tract E–K–F–G theretofore conveyed by Mathias Steusey to Gustof Mischke, Plaintiff's Exhibit No. 33. Likewise, we conclude that the trial court was warranted in construing the deeds from Seeback to Teske, Plaintiff's Exhibit No. 63, from Teske to Brown, Plaintiff's Exhibit No. 64, and from Brown to Gladish, Plaintiff's Exhibit No. 65, as conveying the same tract E–B–A–K. The metes and bounds description in the deed from R. A. Gladish to Margaret S. Coates, Plaintiff's Exhibit No. 67, standing alone is, to us, unintelligible but with the aid of the recited reference to the above-named deeds from Seeback to Teske, Teske to Brown, and from Brown to Gladish, it is our opinion that the Gladish to Coates deed can be properly construed to refer to all of tract E–B–A–K except an 8-acre tract referred to therein as having been sold to Coy Thomas and manifestly not embracing any part of the land claimed by the appellant. Thereafter, deeds from Coates to Cochran and from Cochran to the appellee complete the chain of title.

 By her fourth assignment of error in the motion for rehearing, the appellant contends that this court has not passed on the question of the sufficiency of appellee's proof of its chain of title to tract G–E–K–F, commonly referred to as the 92-acre tract. As we analyze the appellant's reasoning, the contention of a break in the chain is based on the proof that Decker deeded the 250-acre tract to Mat Steussey, not Mathias Steusey, and the deed from Steusey to Mischke, dated ————, 22, 1872, conveying the 92-acre tract, was given by Mathias Steusey, not Mat Steussey. It is asserted that the court cannot assume that Mat Steussey, the grantee in the Decker deed, is the same person as Mathias Steusey, the grantor in the deed to Mischke, and that, therefore, there is a break in the title chain. The name Matt has been held to be recognized as the abbreviation or contraction of Matthew. Chandler v. Robinett, 21 Cal.App. 333, 131 P. 891. We have found no case involving the use of Mat as a first name. Matthias is the name of the disciple chosen to be one of the twelve to fill the place vacated by Judas Iscariot. Acts 1:26. This is also the name of a Roman emperor and the name of a King of Hungary. While it is a name not in as common usage as the name Matthew, yet, in the instant case, where a tract of land was deeded to Mat Steussey, using an apparently abbreviated first name, and this was followed by a deed, covering part of that same tract, by Mathias Steusey, we are of the opinion that the court correctly assumed that the name Mat was an abbreviation or contraction of the name Mathias. The presumption arising from an identity of names would therefore follow. Knight v. Berger, 57 Cal.App.2d 763, 135 P.2d 389; State Bank & Trust Co. v. W. O. Horn & Bro., Inc., Tex.Civ.App., 295 S.W. 698. Under this presumption, the chain of title to the 92.8-acre tract G–E–K–F connects down to the appellee.

 The appellant contends that there is an unlocated 60-acre tract evidenced by deed from Galveston Investment Company to J. R. Hill, Plaintiff's Exhibit No. 27, and that the appellee has failed to show its location and has failed to show whether or not it covers any part of the land in controversy; that the appellee having introduced the deed showing this outstanding title, it devolved upon appellee to show the location of the land covered by the deed and to establish that it did not cover any part of the land claimed by the appellant. The deed in question describes a tract of land as follows:

"Beginning at the North corner of the J. W. Fowler 460 acre tract. Thence S. 45 E. 1089 feet with the S. E. line of said tract; Thence West, 45 S 2400 feet.

592

Thence N. 45 W. 1089 feet; Thence East 45 North 2400 ft. to the place of beginning, containing 60 acres of land."

The record reveals a conveyance to W. J. Fowler of the 390-acre tract C–G–F–D, Plaintiff's Exhibit No. 11, and a conveyance from W. J. Fowler to A. M. Rhodes of a tract described as 460 acres of the A. Prather Survey, Plaintiff's Exhibit No. 12, the recording reference in that deed being to Book X, pages 142 and 143, for further description. At page 142 of Volume X, of the deed records of Montgomery County, is found the deed from Mat Steussey to Isaac Decker, conveying tract C–G–F–D. Regardless of whether the starting point of the 60-acre survey is at point F, the north corner of the 390-acre tract, or point K, the north corner of the 92.8-acre tract, or at some point along the line K–F, a sufficient distance northwest of point D to be the north corner of a 460-acre tract, yet the call for distance West 45 degrees South is only 2400 feet and, under the record, would not extend a sufficient distance southwest to embrace any of the land in controversy claimed by the appellant. The appellant is therefore in nowise affected by this deed from Galveston Investment Company to J. R. Hill, and the point will be overruled.

We have examined the remaining assignments of error contained in the appellant's motion for a rehearing and, in our opinion, a further discussion of them is unnecessary. The appellant's motion for a rehearing is overruled.